## GUARDIAN MUTUAL LIFE INS. CO. OF NEW YORK

*v.*

## PATRICK HOGAN.

1. PLEADING—*averments in a declaration on a life insurance policy.* In a suit on a policy of life insurance, procured by the insured for the benefit of another, it is not necessary that the declaration should aver that the beneficiary had any interest in the life of the insured, but a different rule prevails where one procures an insurance on the life of another. In such a case, the plaintiff must aver, in his declaration, that he had an insurable interest in the life insured.

2. Where a party made application, in the name of his father, for a policy of insurance on the life of the father, for his (the son's) benefit, and the agents of the company, being aware of all the facts, and that the father knew nothing of the transaction, and paid nothing on the policy, still caused the policy to be issued to the father as if procured by him for the benefit of the son, it was *held*, that, as a mere question of pleading, the company could not be heard to make objection that the transaction was different, in fact, from what it purported to be by the policy, and that, in declaring on it, the plaintiff was not to aver in his declaration that he had an insurable interest in his father's life.

3. Where a policy of insurance contains a recital that it was issued in consideration of the application of a previous policy which is made part of the new policy, it is not necessary, in declaring on the policy sued on, to refer to such application; a cause of action is shown by declaring upon the policy sued on, alone, and if the representations in the former application furnish any matter to defeat the right of action, it should be set up in defense.

4. FRAUD—*false representations made to an agent of a company, who knows they are false, but adopts them as true, does not amount to a fraud on the company.* Where the agents of a life insurance company solicited a party to take out a policy of insurance on his life, which he declined to do, but suggested taking one in the name of his father, on the life of the father, for his benefit, and thereupon, without the knowledge of the father, and with full knowledge to the agents, the necessary application was made out in the name of the father, and the policy issued to him as if upon his own application, it was *held*, that the conduct and dealing of the agents throughout the whole affair showed too much privity and knowledge on their part, in respect to the actual facts, to expose the transaction to the imputation of being a fraud upon the company.

5. Evidence—*of amount of premium paid on former policy, in a suit on a substituted policy.* In a suit brought upon a policy of life insurance, which contained a clause that, if the death of the assured should be caused by suicide, the company should only be liable for the amount of premium paid on such insurance, and the defense set up to the suit was, that the assured had committed suicide, it was *held*, that it was competent for the plaintiff to prove that the policy sued on was, in fact, a substitute for a former policy and the amount of premium paid on both policies.

6. Same—*presumption as to manner of death of party whose life is insured.* In a suit on a policy of life insurance, where there is the occurrence of death, and no evidence as to the cause, the presumption is, that it was from natural causes, and not an act of self-destruction, and so it is where the evidence as to whether it was by suicide or not, is equally balanced, but no such presumption arises merely from the fact that, under the evidence, there may be a doubt as to whether the death was caused by suicide.

7. Where the defense in a suit upon a policy of life insurance is, that the death of the assured was produced by self-destruction, the question should be fairly submitted to the jury, and be decided by them upon a preponderance of the evidence, and it is error to tell them that, if the evidence leaves the matter in doubt, the presumption is, that the death was produced by natural causes, and not by self-destruction.

8. Instruction—*when calculated to mislead the jury.* An instruction as to what the presumption of law is, upon a question of disputed fact, is extremely likely to mislead a jury, and should not be given.

9. Life insurance—*wager policy void.* A policy of insurance issued to one who has no insurable interest in the life of the assured, is a mere wager policy, and void.

10. Same—*moral claim not an insurable interest.* A moral claim does not constitute an insurable interest in the life of another, in behalf of one as a creditor.

11. Same—*mere relation of father and son does not constitute an insurable interest in the son in his father's life.* The mere relation of father and son does not constitute an insurable interest on behalf of the son in the life of the father, unless the son has a well founded or reasonable expectation of some pecuniary advantage to be derived from the continuance of the life of the father.

12. Same—*effect of insurance in excess of insurable interest.* Even if a party has an insurable interest in the life of another, yet, if the sum insured is largely in excess of such insurable interest, it tends to prove that the insurance was procured for mere purposes of speculation, and if such is the fact, there can be no recovery on the policy.

13. INSURABLE INTEREST—*facts only tending to prove an insurable interest should not be declared by the court to constitute such interest.* A son continued to reside with his father for several years after he becomes of age, and worked for him, for which he receives no compensation, and also makes valuable improvements upon a piece of land, upon a well grounded expectation that his father will give him the land, and the father disposed of the land, and paid him no compensation for such improvements: *Held,* that these facts were no more than evidence tending to show an insurable interest in the son in his father's life, and should not be declared by the court, in instructions to the jury, to constitute an insurable interest.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

On December 31, 1868, the plaintiff in error, a corporation in New York, granted to John Hogan, of Rockford, Illinois. a policy of insurance, No. 16,870. on his life, for $10,000. to be paid to his son, Patrick Hogan, who resided some 17 miles from Rockford, in Ogle county, on the death of the father, subject to the conditions of the policy.

The circumstances under which the policy was issued were, that J. C. Mayberry was the general agent of the company in 1868 and 1872, residing at Rockford. L. E. Herrick was a solicitor of insurance, under Mayberry, and went out in company with one Parkison, another insurance solicitor, from Rockford to Ogle county, to solicit Patrick Hogan to take insurance on his own life. He declined to take any. but originated a suggestion for a policy on his father's life, John Hogan, an old man, living at Rockford, if it was practicable. There were doubts of its practicability, but, after an interview of some hours, an application was made out by Herrick, to be delivered to Mayberry. Herrick knew nothing of John Hogan, except from Patrick's statements, neither he nor Mayberry ever having seen John Hogan till long after the policy was issued. The application was taken away by Herrick, and soon after delivered by him to Mayberry. The signature of John Hogan appeared to the application, and, as may be inferred from the evidence, was in the handwriting of Her-

rick. Mayberry forwarded the application to New York, to the company, and received therefrom the policy, and mailed it to Patrick Hogan, Mayberry never having seen or had any communication with Patrick up to that time. He never collected any premiums from John Hogan, or had any communication with him. At a subsequent time, Mayberry requested Patrick Hogan to change the policy into a Tontine policy, stating to him that the company were changing all their policies to Tontine policies, and having gone to his house to see him for the purpose. There was an arrangement that Patrick Hogan would call and see about it. Some days or weeks afterward, he came into Mayberry's office, and, at the latter's request, signed the following letter, the signature, "John Hogan," being written by Patrick Hogan, viz:

"Rockford, Ill., *Oct.* 28, 1872.

J. C. Mayberry, Esq., *State Agent, Rockford :*

Dear Sir—Please obtain for me a Tontine policy for ten thousand dollars in the Guardian Mutual Life Insurance Company of New York, as I wish to surrender policy No. 16,870, and accept its return value to apply on the premium on the new policy, reference being had to my application for policy No. 16,870.

Yours truly,          John Hogan."

Thereupon, Mayberry himself filled out and forwarded to New York what is called a "dummy application," for the new policy, Patrick Hogan doing nothing more than to sign the letter as above. The company thereupon issued a new policy on the Tontine plan, called a "Tontine saving policy," No. 33,754, dated November 7, 1872. This policy, like the first, purports to insure the life of John Hogan in the amount of $10,000, for the sole use of his son, Patrick Hogan, and contains the recital that it is granted "in consideration of the representations made in the application for policy No. 16,870, which is hereby made a part of this contract."

John Hogan died from the effects of taking arsenic, August 26, 1873.

This suit was thereafter brought by Patrick Hogan against the insurance company. upon this second policy, the "Tontine saving policy," wherein he recovered in the court below a verdict and judgment for $10,500, and the defendant appealed to this court.

Messrs. SLEEPER & WHITON, for the plaintiff in error.

Mr. WILLIAM LATHROP, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is first insisted, as a ground for reversing the judgment, that the averments in the declaration are not sufficient to sustain the judgment. upon the evidence.   The declaration was framed precisely as if John Hogan had, as the policy purported, in fact procured the insurance himself for the benefit of Patrick Hogan, and so it is not averred, as it need not be in such case, that Patrick Hogan had any interest in the life of John Hogan.

But a different rule prevails where one procures insurance on the life of another.   In such case the plaintiff must aver, in his declaration on the policy, that he had an insurable interest in the life insured, and prove the same affirmatively, as a part of his case.   And as the fact here is, that Patrick Hogan procured the insurance in question upon the life of John Hogan, without the latter's knowledge or consent. and that Patrick Hogan alone. without the knowledge of John Hogan, paid whatever premiums were advanced upon the policy, it is insisted the declaration is not sufficient to sustain the judgment upon the evidence, for want of the averment that Patrick Hogan had an insurable interest in the life of John Hogan.

Although it may be otherwise upon the proof upon any question as to the validity of the policy, as respects the form of the declaration, we regard the company as concluded from making any such objection.   With knowledge of the facts,

the agents of the company allowed, and were instrumental in causing, the transaction of the insurance to assume the form which it did, and in framing the declaration upon the policy, the plaintiff was justified in treating it according to its purport, and, upon a mere question of pleading, the company should not be heard to make the objection, that the transaction was different, in fact, from what it purported to be by the policy. And in this connection may be answered another point made, that the application was a fraud on the company, in not disclosing that it was really Patrick Hogan's application, when it purported to come from John Hogan. The whole conduct and dealing of the agents with Patrick Hogan, throughout the entire affair, in all its different stages, show too much of privity and knowledge on the part of the agents of the company in respect of the actual facts, to expose the transaction to this imputation.

It is further objected, on this subject of pleading, that, inasmuch as, according to the recital of the policy sued on, it was issued "in consideration of the representations in the application for policy No. 16,870, which is hereby made a part of this contract," the declaration should have set out the whole transaction, beginning with the original insurance, and have counted upon both policies. A good cause of action was shown by declaring upon the policy sued on alone, and we regard it as unnecessary to have noticed in the declaration the former policy, or application. If the representations in the former application furnished any matter in defeat of the right of action, it was open to the defendant to avail of it in defense.

It is said, if this position taken is not correct, then the court below erred in permitting the original policy and the payments made under it, to be given in evidence on the trial. But this was done, not in support of the action, but to meet the matter of defense set up, of suicide. Had such defense been established, the limit of recovery, by the provisions of the policy, would have been the amount of premiums paid,

In view of this defense, the proof, we think, was properly made of the whole amount of the premiums which had been paid under both the policies.

The policy in suit, as also the original one, contained the provision that, "should the death of the assured be caused by any act of self-destruction whatever, sane or insane, then the said company shall pay to the assured the full amount of the premiums that shall have been paid hereon, but no further sum whatever, and then, and in that case, the policy shall cease and determine."

It clearly appeared that John Hogan died from the effects of arsenic, either purposely or inadvertently taken by himself. It was a main ground of defense, that the poison was taken designedly, and the death caused by suicide. Evidence was adduced tending to its proof.

The court below gave to the jury, for the plaintiff, this instruction:

"And the court further instructs the jury that, in case of death, and the evidence leaves the matter in doubt whether the deceased came to his death by an act of self-destruction or by accident, the law presumes the death to have occurred from accident."

The giving of this instruction is assigned as error. This instruction required even more than full proof of the fact of suicide—the amount of proof required in a criminal case. To constitute full proof of the fact in dispute, only requires evidence which satisfies the minds of the jury of the truth of the fact to the exclusion of every *reasonable doubt*. This instruction, in effect, tells the jury that, if there is, under the evidence, *any doubt* of the fact that the deceased destroyed himself, the law presumes the death to have occurred from accident.

Under the instruction, no matter how strong the preponderance of evidence might have been of the commission of suicide, yet, if the jury had a doubt upon the subject, it is

not seen how they could have done otherwise than to find against the fact of suicide.

Where there is the occurrence of death merely, and no evidence upon the subject, the presumption is, that it was from natural causes, and not an act of self-destruction. The presumption prevails in the absence of proof, or in case where the evidence on the point is equally balanced. This is the extent.

The jury, we think, were not, under this instruction, left at liberty, as they should have been, to determine, from all the evidence, whether there was here an act of self-destruction or not. The defendant was entitled to have the issue it made on this question fairly submitted and decided, upon a preponderance of the evidence adduced. An instruction to a jury what the "presumption of law" was, upon a question of disputed fact, was commented upon in *Garrettson* v. *Pegg*, 64 Ill. 111, and condemned, as being extremely likely to mislead the jury.

The instruction was erroneous.

Objection is also taken to this instruction, which was given for the plaintiff:

"If the jury believe, from the evidence, that the plaintiff, Patrick Hogan, was the son of John Hogan, and that the relations between the father and son were amicable and affectionate, and that John Hogan was a prosperous and well-to-do man; and if the jury further believe, from the evidence, that Patrick Hogan had remained at home and worked for his father several years after he became of age, for which he had received no compensation from his father; and if they also believe, from the evidence, that Patrick Hogan had made valuable improvements after he became of age, upon an eighty acres of land of his father, under a promise, or a well-grounded expectation that his father would give him the land upon which the improvements had been made, and that his father, John Hogan, had subsequently disposed of the

land, and had made said Patrick Hogan no compensation for the improvements made by him, said Patrick Hogan, thereon, and that he, Patrick Hogan, had a just, legal and moral claim upon his father, for such labor and improvements upon said piece of land at the time of making said application for insurance upon the life of his father, and the issuing the policy thereon, then the court instructs the jury that such facts would constitute an insurable interest in Patrick Hogan in the life of his father, John Hogan."

As also to the refusal to give the following instructions, which were asked on behalf of the defendant:

" If you shall find, from the evidence, that the applications for insurance bearing date December 29, 1868, and October 28, 1872, offered in evidence, and purporting to have been made by John Hogan, were really, in substance, the application of Patrick Hogan for insurance on the life of his father, then you will inquire whether Patrick had an insurable interest in the life of his father which would support a policy for $10,000:"

" In determining this question, you will inquire whether, from the evidence, it appears that, at the time of making such applications, said Patrick had any pecuniary interest, as creditor or otherwise, in the life of his father, or any reasonable expectation of profit or advantage which might be thwarted by his father's death, for the law will not enforce policies of insurance procured for mere gambling or wager purposes upon lives, on the continuance of which the assured can not be deemed to have an insurable interest; and the mere relation of father and son, where both parties are of mature years, and live apart, in independent pecuniary circumstances, and mutually entirely independent of each other, and having no business relations with each other, does not create an insurable interest in the son on the life of the father; and, in deciding whether, in this case, Patrick Hogan had such an interest in his father's life as will support the insurance pro-

cured, you will take into account all the evidence as to the respective ages and situations in life of the father and son, and their business and social relations and all other facts which tend to show whether, as above defined, the son had an insurable interest in his father's life, at the date of his application aforesaid."

"You are further instructed that, though a party may have *some* insurable interest in the life of another, as creditor or otherwise, yet, if the amount of insurance procured upon such life appears palpably to be very largely in excess of any possible loss the assured can suffer from the death of the insured, then the presumption of a gambling or wager insurance arises, which calls upon the assured to show that such insurance was not procured as a mere cover for gambling, or a wager upon the life of the insured; and, in this case, if you believe, from the evidence, that the plaintiff had some interest of an insurable character, as already defined, in his father's life, at the date of his several applications for insurance, yet, if you find, from the evidence, that the amount procured was vastly disproportionate in its excess to any probable loss which Patrick might suffer from his father's death, such circumstance has a tendency to prove that the insurance was procured for mere purposes of speculation, and as a cover for gambling, and if, from the evidence, you shall find that such was the fact, then the plaintiff can not recover in this action."

Under the facts, we consider that Patrick Hogan had no just or legal claim upon his father for labor or improvements, and that should not have been submitted to the jury as a question for them to find upon. A moral claim would not constitute an insurable interest in behalf of one as a creditor. The facts, as we regard, were no more than evidence tending to show an insurable interest, and should not have been declared by the court to constitute an insurable interest.

As said by the court in the case of *Reese* v. *The Mutual Benefit Life Insurance Company*, 23 N. Y. 516, "A policy

obtained by a party who has no interest in the subject of insurance, is a mere wager policy."

"But policies without interest, upon lives, are more pernicious and dangerous than any other class of wager policies, because temptations to tamper with life are more mischievous than incitements to mere pecuniary fraud." And see 3 Kent's Comm. 11th Ed. 462–3.

It is said, that every man has an interest in his own life to any amount he chooses to value it, and may insure it accordingly. But what is such an interest in the life of another as will support a contract of insurance upon the life, is confessedly not as yet well defined under the authorities. Some of them tend in the direction that the mere relationship, as between father and son, reciprocally, is a sufficient foundation upon which to rest an insurable interest.

Mr. May, in his late treatise on the Law of Insurance, sec. 107, says that precise question yet remains to be decided, and he states, as the result of his review of the authorities, his conclusion to be, that the relationship seems to be of little importance except as tending to give rise to the circumstances which justify a well-founded expectation of pecuniary advantage from the continuance of the life insured, or risk of loss from its termination.

Mr. Bliss, in his work on Life Insurance, sec. 31, seems to arrive at essentially the same conclusion. We are disposed, from an examination of the authorities, and our own sense of the requirement of sound public policy, to concur in such conclusion, and hold that the mere relation here of father and son did not constitute an insurable interest in the son in the life of the father, unless the son had a well-founded or reasonable expectation of some pecuniary advantage to be derived from the continuance of the life of the father.

We do not regard as really holding anything different, the case, cited as a contrary authority by appellee's counsel, of *Insurance Company* v. *Bailey*, 13 Wall. 619, where the court, in discussing this question, say, as the better opin-

ion, "that it is sufficient to show that the policy is not invalid as a wager policy, if it appear that the relation, whether of consanguinity or of affinity, was such, between the person whose life was insured and the beneficiary named in the policy, as warrants the conclusion that the beneficiary had an interest, whether pecuniary or arising from dependence or natural affection, in the life of the person insured."

We think this may consist with the idea that it is the well-founded expectation of advantage to be derived from the continuance of the life insured which makes the insurable interest in it, and not the mere relationship as between father and son, under any and all circumstances.

The circumstances of the situation of the parties, as bearing in this connection, were, that, at the time of the application for the original policy, John Hogan was an infirm man, having but a partial use of his right arm and leg, unable to labor, engaged in no business, and sixty years of age, as the application states, though his age was a point in dispute, there being evidence tending to show he was at least five years older. He had four children; had been married to a second wife about four years before, by whom he had a young child. He left an estate of some $13,000, and a legacy by his will of $1000 to Patrick Hogan. The latter was forty years of age, living away, in another county, some seventeen miles distant, with a family of children, upon a farm of his own, of 300 or 400 acres.

As respects the second refused instruction, appellee's counsel. saying nothing in justification of its refusal, asserts that it was given, and files with his brief a certificate of the clerk of the circuit court to that effect. But we, of course, can not notice it. The bill of exceptions states that the instruction was refused. We can only look to and act upon that.

*Cammack* v. *Lewis*, 15 Wall. 643, was a case where, in a policy of insurance to a creditor on the life of a debtor, the sum insured was so largely disproportionate to the amount of the creditor's claim, that the policy was held void, as

being a mere wager policy. The principle of this decision would seem to have entitled the defendant to the instruction.

According to the views which have been expressed, the first refused instruction was substantially correct, and, we think, should have been given, as well as the second one, as also that the above ones given for the plaintiff should have been refused.

Other questions have been raised and discussed, which, in order to the disposition of the case, it is unnecessary to notice, and we pass them by, without considering them.

The judgment is reversed and the cause remanded.

*Judgment reversed.*