## William R. Cisna v. Nathaniel K. Sheibley.

1. INSURANCE—*Wager Policies—Void as Against Public Policy.*— Where the insurance upon a person's life is obtained by other parties, who pay the premiums and all expenses, and solicit him to make the application and attend to the details of the business upon an agreement and understanding as to the division of the money collected upon the policies, such policies are purely wager policies, against public policy, and void.

2. SAME—*Good Faith Necessary.*—Policies in life insurance companies held by persons having no insurable interest, must be obtained in good faith.

3. SAME—*What is a Wagering Policy.*—A policy taken out on the life of a third person by a beneficiary, in the continuance of whose life such beneficiary has no pecuniary interest, is to be regarded as a wagering policy, and as such is void.

4. SAME—*What is an Insurable Interest.*—To constitute an insurable interest there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary, or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the person insured.

5. FRAUDULENT TRANSACTIONS—*Court of Equity Will Not Lend Its Aid to Enforce.*—A court of equity will not lend its aid in the enforcement of a division between parties of the spoils which result from unlawful transactions between such parties.

Bill for Accounting.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed April 9, 1900.

**Statement by the Court.**—Appellant filed his bill against appellee, which alleges, in substance, that in January, 1893, appellant entered into a copartnership with appellee for

the purpose of carrying on an insurance business; that appellant was to furnish $600 to said business and receive five per cent of the profits, and in the same porportion to share the losses, and that appellee was to render certain services, receive five per cent of the profits and share in the losses of the business in the same proportion; that the business continued until December, 1895, when it was dissolved by limitation, the business then remaining unsettled; that from the profits appellee was to pay out ten per cent and the remaining eighty per cent was to be paid to appellant in addition to the said five per cent; that in the conduct of the business appellee had received more than $14,000, and had paid out ten per cent thereof, and also five per cent to appellant, but that appellee retained the balance and wholly neglected and refused to make any settlement with appellant although repeatedly requested so to do, and that appellant pretends that there is a large sum due to him.

The bill prays for an accounting, an injunction, receiver, and a dissolution of the partnership.

An amendment to the bill alleges that appellant is entitled to receive eighty per cent of said $14,000 retained by appellee, for which he refuses to account.

The answer denies the partnership *in toto* and denies that appellee has any sum of money in his hands for which he should account to the appellant, and denies specifically all the allegations of the bill and that there is anything due from appellee to appellant.

After replication the cause was referred to a master to take proof and report his conclusions thereon, and the master after taking evidence reported, in substance, that in 1893 appellant was a practicing physician in Chicago, and appellee was doing business as a life insurance broker; that in January, 1893, they entered into a verbal agreement, by which they were to engage in the business of procuring insurance upon the lives of parties to be selected by them; that ten per cent of the amounts collected on insurance policies was to be retained by the beneficiaries in said policies, ten per cent was to be divided equally between appel-

Cisna v. Sheibley.

lant and appellee, and the remaining eighty per cent was to
be paid to the party furnishing the money for procuring
the insurance and paying the expenses of carrying the
insurance until the decease of the insured; that in pursu-
ance of such agreement they caused to be insured the life
of one Kennedy in various companies for the total sum of
$19,000, the beneficiary named in each of the policies being
the wife of said Kennedy, and all the expenses of procur-
ing and carrying the insurance were paid out of moneys
advanced by appellant; that February 16, 1894, Kennedy
died and appellee collected upon said insurance policies upon
the life of Kennedy the sum of $16,000, from which he
paid to Kennedy's widow $1,600 and to appellant $1,425.

Among other matters reported by the master, not neces-
sary to be set out, he found that the appellant furnished
the money for carrying on said business between him and
appellee, and that there was due to appellant out of the pro-
ceeds of the Kennedy policies $11,200; that after Kennedy's
death the business was continued, and as a result appellee
paid out of the moneys in his hands for expenses in the con-
duct of the same business for other policies procured under
the same agreement, divers sums, which, being deducted,
left a balance due from appellee to appellant of $9,012.23.

It also appears from the report that it was contended
before the master that the appellant could not maintain
this bill, because the policies that were procured pursuant
to the agreement between appellant and appellee, and out
of which the moneys came to appellee's hands, were wager
policies, issued contrary to public policy and forbidden by
law.    The master, upon the authority of certain cases cited,
found that the policies issued upon the life of Kennedy
were valid, and while the beneficiary would not have been
compelled to pay over any of the moneys received thereon,
either to appellant or appellee, that inasmuch as the money
was received by appellee and he agreed to make settlement
for the same, he should be required to pay over the amount
found to be due from him to appellant.

The chancellor, upon a hearing of exceptions to the

report, sustained the exceptions and dismissed the bill for want of equity, from which decree this appeal is taken.

LOESCH BROTHERS & HOWELL, attorneys for appellant.

J. T. HANNA, attorney for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

It is claimed by counsel for appellant that the partnership agreement is valid and enforceable in equity, and also that even though it were illegal, appellant is nevertheless entitled to recover from appellee the money collected by him from the widow of Kennedy, upon the theory that it was paid to appellee in trust for appellant.

As to the second claim, it is sufficient to say that appellant's bill is based upon the theory of a partnership and not that of a trust; that the appellee collected and received certain moneys in pursuance of the partnership agreement, for which he neglected and refused to account to appellant as his partner. There is no allegation in the bill whatever of a trust, and it is therefore unnecessary to consider the numerous authorities cited by counsel bearing upon this point, nor the arguments based thereon. Without proper allegations, the general rule is, there can be no relief even though the proof may justify it. This case is not an exception to the rule.

As to the first contention, that the partnership agreement is valid, the evidence shows clearly that the business of the partnership was to be, and as actually carried on was, that of procuring insurance upon the lives of persons who might be selected by appellant, who was a practicing physician; that all the expenses of procuring the insurance and carrying it, including the premiums upon the several policies, were paid by the appellant, and in the case of Kennedy, whose life they procured to be insured, he was unable to pay the premiums and would never have taken the insurance but for the fact that there would be no cost to him. Of this he was assured by appellee, pursuant to the agreement between

Cisna v. Sheibley.

the latter and appellant.   Therefore, when we look beyond the mere form of the transactions by which Kennedy's life was insured, he did not procure the insurance, but it was obtained by appellant and appellee, the one furnishing the money to pay the premiums and all expenses, and the other soliciting him to make the applications and attending to the details of the business, upon an agreement and understanding between appellant and appellee on the one part and Kennedy and his wife on the other part, that upon the death of Kennedy the moneys collected upon policies taken out by him should be divided as follows: ten per cent to Kennedy's wife, ten per cent to appellant and appellee jointly, and the remaining eighty per cent to the one who should furnish the money to pay expenses and premiums.   Policies thus obtained were purely wager policies, and the scheme, the very basis of the partnership between appellant and appellee, was a speculation upon life, which is against public policy and rendered the policies upon the life of Kennedy invalid.   Guardian, etc., Co. v. Hogan, 80 Ill. 35–44; Benefit Ass'n v. Blue, 120 Ill. 121–4; Warnock v. Davis, 104 U. S. 775–8; Gilbert v. Moose, 104 Pa. St. 76; Keystone, etc., Ass'n v. Norris, 115 Pa. St. 446; Joyce on Insurance, Secs. 154, 889, 918; Burbage v. Windley, 108 N. C. 361.

In the Hogan case, *supra*, it was held that an insurance policy upon the life of a father in favor of his son, in order to be valid, there must appear to be more than the mere relation of father and son.   The court quotes with approval from the case of Ruse v. Insurance Co., 23 N. Y. 516, as follows:

" A policy obtained by a party who has no interest in the subject of insurance is a mere wager policy.   But policies without interest upon lives are more pernicious and dangerous than any other class of wager policies, because temptations to tamper with life are more mischievous than incitements to pecuniary fraud."

In the Blue case, *supra*, it was held that it was not against public policy for a person to insure his own life when he paid the premium therefor and afterward to assign it to one having no insurable interest, when it failed to

appear that the assignee ever paid any portion of the premiums to secure the policy or to keep it in force. The court say:

"It may be regarded as a plain proposition of law, that a wagering policy is void, and we think it also well settled that a policy taken out on the life of a third party by a beneficiary, in the continuance of whose life the beneficiary has no pecuniary interest, may be regarded as a wagering policy, and as such would be void."

The court also quotes with approval from Insurance Co. v. Schaefer, 94 U. S. 457, as follows:

"The essential thing is that the policy should have been obtained in good faith, and not for the purpose of speculating on the hazard of a life in which the assured has no interest."

In the case of Warnock, *supra*, it was held by the Supreme Court of the United States, in a carefully considered opinion by Mr. Justice Field, that where a person procuring insurance on his life agreed with a firm that the latter should pay all fees and assessments to the insurers and receive nine-tenths of the amount due thereon at his death, and pursuant to this agreement, assigned the policy to the firm and it paid the fees and assessments, and on the death of the assured collected the amount of the policy, that the administrator of the assured was entitled to recover the moneys so collected by the firm, it appearing that there was no design to perpetrate a fraud upon any one. The court held that the firm, having no insurable interest in the life of the assured, could not have taken out a policy in its own name, and say:

"Such a policy would constitute a wager policy or a mere speculative contract upon the life of the assured, with a direct interest in its early termination."

The court further say, in discussing what constitutes an insurable interest:

"In all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured.

Cisna v. Sheibley.

Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned as being against public policy."

And in speaking of the assignment say: "Nor is its character changed because it is for a portion merely of the insurance money."

In the Gilbert case, *supra*, it was held in a somewhat similar case, that the administrator of the assured could recover money collected by an assignee of the policy when he had no interest in the life of the assured, it appearing that there was no fraud in the issuance of the policy. The court refers with approval to the Warnock case, *supra*, and says:

"If, however, the question were one of first impression and to be settled on the ground of public morality and judicial policy, we could hardly fail to reach the same conclusion. So fraught with dishonesty and disaster and so dangerous even to human life has this life insurance gambling become, that its toleration in a court of justice ought not, for one moment, to be thought of."

In the Norris case, *supra*, it was held that a policy taken out with the name of Norris as beneficiary, even if he had an insurable interest, it being understood at the time that he was to assign it to one who had no insurable interest, rendered the policy void. The court say:

"Norris' name was used as a mere blind and could deceive no one conversant with the facts. Spangler was the real beneficiary, and the policy would have been quite as efficient had it been issued directly to him."

In the Burbage case, *supra*, a policy was taken out in the name of Windley on the life of Hammond, Windley having no interest in the life of Hammond, but he agreed to pay a portion of the insurance in the case of Hammond's death to the latter's wife. It was held the policy was a wager and void. The court say, in speaking of such policies:

"They stimulate, afford incentive to, and encourage, those who become parties to them, to resort to sinister, oftentimes criminal, means to turn or end the hazard in

their favor, and thus gain unjust and dishonest advantage. They encourage men to engage in the business of speculation in hazards not necessary or useful in the general purposes and business of life, but which is positively and seriously injurious to them. · Such contracts and speculations contravene the justice and policy of the law—they are *contra bonos mores*, and are therefore void."

The court also say with reference to the promise by Windley to pay Hammond's wife a portion of the insurance, that it was expressly based upon and grew out of the consent of Hammond to allow Windley to insure the life of the former, and " that it partook of the wager—the vicious nature of the contract of insurance. Such consideration was therefore void."

In the case at bar appellant and appellee were really the beneficiaries of the policies on Kennedy's life, and had they been taken directly, instead of making Kennedy's wife the beneficiary, there could be no possible question as to their invalidity. The making of Mrs. Kennedy the beneficiary was a mere sham and subterfuge; they used Kennedy as a mere tool or instrument to accomplish their scheme, beyond which a court of equity will look to see what was the real contract. Kennedy was unable to procure the insurance, and he did not, in good faith, procure it, which, as said in the Schaffer case, *supra*, was the " essential thing." It was a fraud upon the insurance companies. The fact that Mrs. Kennedy was to have a portion of the insurance does not change the real nature of the contract. As held in the Norris case, *supra*, the use of her name was a mere blind, and as held in the Burbage case, the agreement to pay her a part of the insurance, was based upon, grew out of, and was a part of the agreement between all the parties concerned except the insurance companies. A more immoral, vicious and dangerous scheme could not have been well conceived, and in this connection it is remarkable, to say the least, that Kennedy died within a year from the time these policies were taken out upon his life, and that several other persons upon whose lives appellant and appellee took insurance under the same agreement, met with speedy deaths.

As a result of the partnership agreement and the insurance policies obtained upon the life of Kennedy, the money in question which appellant claims should be paid to him by appellee, came to the latter's hands. · The money is the proceeds of an unlawful agreement between appellant and appellee. It is a mere speculation upon the life of the assured, and void as against public policy. A court of equity will not lend its aid in the enforcement of a division between parties of the spoils which result from unlawful transactions between such parties. Neustad v. Hall, 58 Ill. 172–5; Craft v. McConoughy, 79 Ill. 346–50; Goodrich v. Tenney, 144 Ill. 422–30; Bishop v. Am. Pres. Co., 157 Ill. 315; Cook v. Meyers, 166 Ill. 289; Page v. Hieronymus, 180 Ill. 641; Warnock v. Davis, 104 U. S. 775; Keystone, etc., Ass'n v. Norris, 115 Pa. St. 446.

In the Neustad case, *supra*, the action was assumpsit to recover from one of the parties to an illegal transaction, and the court say : " A court will not aid in the division of the profits of an illegal transaction between associates," and adopt the language of Lord Ellenborough as follows : "We will not assist an illegal transaction in any respect. We leave the matter as we find it; and then the maxim applies, *melior est conditio possidentis.*"

In the Craft case, *supra*, which was in equity and for an accounting of the profits of a partnership under a contract which the court held to be void as in restraint of trade, the doctrine of the Neustad case is re-affirmed, and the court say that it is the settled rule in this State, and held that such a bill could not be maintained.

In the Goodrich case, *supra*, the same doctrine is re-affirmed in the elaborate and thoroughly considered opinion by Mr. Justice Shope, in which it is held that equity will not enforce such a contract, and the court say that the objection to its enforcements "may be made by a party *in pari delicto*, for the defense is not allowed because the party raising the objection is entitled to the relief, but upon principles of public policy and to conserve the public welfare."

In the Bishop case, *supra*, the same doctrine as announced

in the Craft case, *supra*, was re-affirmed, and the court held that it applied to "executed transactions as well as to those which are executory, and would be enforced by courts of law as well as courts of equity. Whatever the parties to an action have executed for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb."

In the Cook case, *supra*, the court, while recognizing the rule of the cases above mentioned and others, said that it did not apply to the case then under consideration because the contract there was founded on a new consideration, and was unconnected with the illegal act which it was claimed should have prevented the relief sought.

The sole basis of the appellant's claim to relief, by his pleadings, is founded upon the partnership contract, which we have seen is clearly illegal and void. There is no claim that appellant is not *in pari delicto* with the appellee, nor can it be said that the appellant's right to relief is unconnected with the illegal contract by virtue of which the moneys claimed to be in the hands of appellee came to him.

We deem it unnecessary to discuss in detail the numerous authorities cited by appellant's counsel upon the question of the illegality of the transactions between him and appellee as we do not consider them applicable. They could only have a bearing upon the theory that Kennedy, in good faith and without the importunity and assistance of appellant and appellee, insured his life for the benefit of his wife. This theory, as we have seen, is not and can not be sustained on the evidence in this record.

We have above referred to and quoted from the Blue case, which, with the cases of Johnson v. Van Epps, 110 Ill. 551, and Martin v. Stubbings, 126 Ill. 387, were relied upon by the master and appellant's counsel. We do not think that either of these cases sustain the contention of appellant's counsel, and particularly for the reason that equity requires that we should look beyond the mere form of the transactions in question and consider their substance. The insurance in the Stubbings case was undoubtedly valid in the

first instance, and the question before the court was whether the insured could make a valid assignment of it to his creditors, and it was held that he could.   In the Blue case the policy was procured by the insured on his own life, and there was no showing but that he paid the premiums or that the assignee had anything to do with procuring the insurance or carrying it.

In the Van Epps case, *supra*, there was no fraud or illegality in the original contract of insurance, and the facts of that case bring it within the principles announced in the Blue and the Stubbings cases, and the statement of the court that no one but the insurer could raise the question of illegality, scarcely seems to have been necessary to a decision of the case.   The assured, long after procuring the insurance, became straightened in his circumstances, and the new beneficiary, substituted after the death of the original, stood in the position of a creditor.   The decree of the Superior Court is affirmed.