Sam Goldstein, Administrator of Estate of Rose Schuman, Deceased, Plaintiff, v. Metropolitan Life Insurance Company, Defendant.

Opinion filed October 27, 1944. Released for publication November 27, 1944.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellant.

WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, for appellee; LLOYD MIDDLETON, of St. Louis, Missouri, of counsel.

MR. JUSTICE STONE delivered the opinion of the court.

This is an action instituted by Sam Goldstein, administrator of the estate of Rose Schuman, deceased, plaintiff appellee (hereinafter for convenience called plaintiff) against Metropolitan Life Insurance Com-

pany, a corporation, defendant appellant (hereinafter for convenience called defendant) in the city court of the City of East St. Louis, to recover upon a life insurance policy and an accidental death benefit issued by defendant to one Abe Schuman who died from gunshot wounds on July 10, 1938. A short time after Schuman's death his wife, Rose Schuman died and plaintiff was appointed administrator of her estate. He made proof of the death of Schuman. Defendant refused payment, but tendered the amount of premiums paid on the policy. The tender was refused and, afterwards, on August 27, 1942, this suit was commenced.

The complaint consisted of two counts, count one, being based upon part of the provisions of the policy as to ordinary death, demanding the sum of $5,000 in accordance with the terms of the policy, and count two declared upon the accidental death benefit, which was to the effect that an additional $5,000 would be due the beneficiary, upon proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained solely through external, violent and accidental means, provided death should not have occurred as the result of self-destruction while sane or insane, or as the result or by the contribution, directly or indirectly, of disease or of bodily or mental infirmity. It was further averred that Abe Schuman died from a gunshot wound sustained solely through external, violent and accidental means, to which there was a denial of those allegations by defendant, and an allegation that Abe Schuman died by his own hand or act.

The cause was first tried March 18, 1943, and resulted in a verdict by the jury in favor of plaintiff, on each count, which verdicts were afterward set aside and a new trial granted. The cause was next tried November 16, 1943, before a jury and a different judge, the judge submitting to the jury a separate verdict as

to each count. A verdict was returned in favor of plaintiff in the sum of $6,313.33, which was the amount of the policy and 5 per cent interest from July 10, 1938, on the first count and the same amount on the second count. Motion for new trial was duly filed, argued and overruled and judgments entered in these amounts, from which judgments defendant prosecutes his appeal to this court.

Errors relied upon for reversal are in substance, that the court erred in refusing the motion offered at the close of all of the evidence, both on counts one and two, to find the issues for defendant; that the court erred in giving plaintiff's Instruction No. 1; that the verdict of the jury on both counts is contrary to a clear preponderance of the evidence, and that the court erred in overruling defendant's motion for new trial.

There is but little dispute about the facts. It appears from the record that Abe Schuman, the insured, aged 37 years, lived with his wife and one boy, Marvin, in East St. Louis. He was the owner of a newspaper route, delivering the East St. Louis Journal, from which he derived a substantial income. He and his family seem to have lived happily and comfortably. His friends, neighbors and business associates testified that he was happy in his family life, devoted to his wife and boy, a man of good habits, good health and cheerful disposition, was not in debt and that they observed no change in his disposition up to and including the day of his death. It had been his custom to take his son and his son's playmates to the theatre every Saturday afternoon and then make collections on his route and call for the boys about 4 p. m. On Saturday, July 9, 1938, Schuman drove the boys to the theatre and left at 12:30 p. m. to collect on his route, telling the son that he would call for him at 4 p. m. Before leaving he gave the boys the price of admission to the theatre from a little purse in which he carried change. He did not return for his son and later in the

evening, the family became alarmed and notified the police of Schuman's failure to return.

In the early part of the week of his death, Schuman purchased a cheap revolver from an East St. Louis pawnbroker. The pawnbroker, who was very well acquainted with him, testified he appeared in a fine mood and when asked what he wanted with the revolver, Schuman replied that he was going to raise some chickens and wanted a little protection.

A week or so before his death, when asked by the circulation manager of the paper, about his mode of keeping his records, and how would they know, if anything happened to him, where his customers were located, Schuman replied in a jovial mood that nothing was going to happen to him. Three weeks before his death, he purchased a family car, and seemed gratified by the pleasure the family derived from it. He had an appointment with his helper on the route, for the day of his death.

Early Sunday morning, July 10, 1938, at about 3:00 a. m. Schuman was found dead, lying on the rear seat of his car, parked about a mile from his home. The police made an examination of the body by means of a flashlight and found a bullet wound near the right temple. One cartridge in the revolver, purchased by deceased earlier in the week, had been discharged, and the gun was in his hand. The bullet seems never to have been removed from the body, and hence there is no identification of it, as being the same fired from the revolver in the hand of deceased.

The two policemen who found the body, testifying for defendant, both testified that the edges of the wound were powder burned, indicative of the close proximity of the gun to the head, when the fatal shot was fired. An undertaker testifying on behalf of plaintiff, testified that he did not notice any powder burns about the wound, and the embalmer testified there was no such burns. The back seat of the car, in which deceased was found seems to have been some-

what disarranged. No purse or money was found upon deceased.

It is contended by defendant that the verdict of the jury on the second count of the complaint is against the manifest weight of the evidence in the case. On the first count the burden was upon defendant to show that the insured committed suicide. On the second count, the burden rested upon plaintiff to show that Schuman came to his death by accidental means. The evidence that deceased had recently purchased the gun that was discovered in his hand, at the time the body was found; an absence of evidence of cleaning the weapon; the powder burns testified to by the two police officers who found the body, were all matters based upon which it might be argued the jury might have inferred self-destruction.

On the other hand, the fact that two other witnesses testified in substance to the absence of such powder marks; the fact that the examination of the body by the police, disclosing the alleged powder marks, seems to have been rather perfunctory and in the dark, with the aid of a flashlight; the complete absence of any motive for suicide; the condition of the back seat of the car in which deceased was found, which might have been indicative of a struggle; the absence of any purse or money on the person of deceased which might be indicative of murder with robbery as a motive; the apparent mental condition of deceased up to within a few hours of his death; the absence of any note of any kind to the family to whom, it is not denied that he was most devoted, all of these were facts from which the jury might well have inferred that death was caused by external, violent and accidental means. We regard the fact that there was no identification of the bullet from the gun in the hand of deceased, as the one that caused his death as most significant. However, it was the function of the jury to determine from the evidence and the proper inferences to be drawn therefrom whether the injury was accidental or self-inflicted.

*Anderson v. Inter-State Business Men's Accident Ass'n of Des Moines, Iowa,* 354 Ill. 538, 548; *Wilkinson v. Aetna Life Ins. Co.,* 240 Ill. 205, 214; *Rosenfield v. Industrial Commission,* 374 Ill. 176, 184; *Sweney v. Northwestern Mut. Life Ins. Co.,* 251 Ill. App. 1, 31; *Downing v. Metropolitan Life Ins. Co.,* 314 Ill. App. 222, 225; *Anders v. Metropolitan Life Ins. Co.,* 314 Ill. App. 196, leave to appeal denied 316 Ill. App. xiv; *Finley v. Federal Life Ins. Co.,* 211 Ill. App. 66, 67; *Dietz v. Metropolitan Life Ins. Co.,* 305 Ill. App. 507, 514; *Star Accident Co. v. Sibley,* 57 Ill. App. 315, 321.

Where a fair question of fact is raised by the proof, an appellate court will not set aside the jury's finding as being against the manifest weight of the evidence. *Armster v. American Steel Foundries,* 313 Ill. App. 378, 385; *Summers v. Hendricks,* 300 Ill. App. 498, 500; *Jones v. Esenberg,* 299 Ill. App. 551, 555; *Gregory v. Merriam,* 294 Ill. App. 483, 489. Inasmuch as two juries have found the issues the same way and upon the record we do not feel inclined to disturb the verdicts as being against the weight of the evidence. *Greer v. Shell Petroleum Corp.,* 281 Ill. App. 238, 245; *Doerr v. City of Freeport,* 239 Ill. App. 560, 567; *Jenisek v. Riggs,* 320 Ill. App. 158, 163.

We are of the opinion that the trial court did not err in refusing the motion of defendant offered at the close of all the evidence to find the issues for defendant, on either count one or two, nor did the court err in overruling defendant's motion for new trial.

Complaint is made of Instruction No. 1, requested by plaintiff and given by the court, which was as follows; ''The Court instructs you that where a man suffers injuries which might have been caused by accident, or might have been intentionally inflicted upon himself, and there is no preponderating evidence as to the cause of such injuries, the presumption is that they occurred by accident.'' It is argued by counsel for defendant that if the presumption is not evidence, if it vanishes when evidence to the contrary is intro-

duced, then the jury should not be told that they can consider the presumption in a case where there is evidence to the contrary. This instruction was approved in the cases of *Wilkinson v. Aetna Life Ins. Co.*, 240 Ill. 205; *Sweney v. Northwestern Mut. Life Ins. Co.*, 251 Ill. App. 1; and *Anders v. Metropolitan Life Ins. Co.*, 314 Ill. App. 196. At the request of defendant, the court gave the jury the following instruction: "The Court instructs the jury that the insurance policy sued on in this case does not cover suicide while sane or insane, and if you find from all of the evidence in this case that the insured, Abe Schuman, came to his death as a result of suicide, while he was sane or insane, then the plaintiff cannot recover on either count of the complaint and your verdict should be for the defendant."

By this instruction the jury was plainly told that if it was shown that the death was the result of suicide, there could be no recovery. In considering plaintiff's Instruction No. 1, this instruction of defendant must be read in connection therewith. *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207. In *Fidelity & Casualty Co. v. Weise*, 182 Ill. 496, 499, the court said: "The plaintiff was entitled to the benefit of the presumption the assured did not take his own life. The presumption was not conclusive but rebuttable. The question to be determined by the jury, from the consideration of all the evidence (the plaintiff being given the benefit of the presumption referred to) was, at the close of the testimony as it was at the beginning, did the assured come to his death through accidental means?"

Considering the instructions, as a series the jury was told just this, and we do not find the instruction complained of, erroneous.

Finding no reversible error in the record, for the reasons above stated, the judgments of the trial court will be affirmed.

*Affirmed.*