Ruth B. ZIEGLER, also known as Ruth Besgrove Ziegler, Plaintiff-Appellee,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant-Appellant.

No. 13061.

United States Court of Appeals Seventh Circuit.

Dec. 7, 1960.

Rehearing Denied Jan. 10, 1961.

Schnackenberg, Circuit Judge, dissented.

662

Patrick W. O'Brien, Chicago, Ill., Miles G. Seeley, Chicago, Ill., (Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel), for defendant-appellant.

Thomas J. Johnson, Jr., Chicago, Ill., Edward J. Griffin, Chicago, Ill. (Defrees, Fiske, O'Brien, Thomson & Simmons, Chicago, Ill., of counsel), for plaintiff-appellee.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

CASTLE, Circuit Judge.

Ruth B. Ziegler, plaintiff-appellee, brought this action [1] against The Equitable Life Assurance Society of the United States, defendant-appellant, as beneficiary under insurance policies issued by defendant on the life of Leslie E. Ziegler, plaintiff's deceased husband. Following the insured's death defendant paid plain-

1. Removed from the State Court to the District Court on grounds of diversity.

tiff the $10,000.00 face amount of the policies. In her suit plaintiff seeks recovery of an additional $10,000.00 in double indemnity benefits which defendant declined to pay. A jury trial resulted in a verdict for plaintiff upon which the District Court entered judgment.

The defendant's appeal presents the following contested issues:

1. Did the District Court err in denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict?

2. Did the District Court err in denying defendant's alternative motion for a new trial?

Each of the policies provide for payment of double the face amount if the insured dies from accident as defined in the policy. The policies define death from accident as "death resulting solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means" excluding death "resulting from or caused directly or indirectly by self-destruction sane or insane, * * * disease or illness of any kind, physical or mental infirmity * * *".

The insured's death resulted from injuries received when he either jumped or fell from a fourth floor window of a hospital where he was undergoing diagnostic tests.

The defendant contends that the evidence provides no rational basis for a finding of death by accident, but on the contrary, establishes that the insured's death was the result of self-destruction and physical or mental infirmity. The defendant also contends that the court erred in giving instructions, over objection, concerning the presumption against suicide and the impeachment of a witness.

■■ In reviewing the ruling of a trial court on a motion for a directed verdict or a motion for judgment notwithstanding the verdict we are governed by the same standards. Such motions should be denied "where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." Smith v. J. C. Penney Company, 7 Cir., 261 F.2d 218, 219.

■ We have examined the record and find that testimony most favorable to plaintiff describes the following circumstances surrounding the incident in question. The insured entered the Illinois Research and Educational Hospital at Chicago on November 18, 1957 for diagnostic tests on the recommendation of a general practitioner. He had consulted this physician during 1956 and 1957. The insured was placed in the hospital's Neuropsychiatric Institute. At the time of his admission he was very confused, apprehensive and not orientated as to date or situation. For a period of two years his condition had been on a continued downgrade; he was grossly fatigued, had a marked loss of weight, walked with a gait tilting to the left, was unsteady, and had poor muscular coordination. By the time he entered the hospital his confusion had gradually increased to the point where his memory became very much disturbed. In 1956 he had complained of physical exhaustion and because of the condition of his health he had resigned as professor and president of a Missouri college and taken a traveling position as National Director of Field Service for the Epilepsy League and moved from Missouri to Downers Grove, Illinois. He resigned the latter position in August, 1957. The insured had hoped to better his physical condition in order to accept a position in another Missouri college which had been offered to him. There was medical testimony that the insured had no emotional instability; that although he was "blue and down in the dumps", there was no emotional depression; he had no mental depression nor suicidal tendencies.

On two occasions the insured attempted to leave the hospital by going down a back stairway. The room he occupied was on the fourth floor. On the day of the incident which caused his death he appeared confused, walked the halls continuously and was discovered going down the back stairway and brought back to his room. He was put to bed about 7:00 P.M. About a half-hour later a nurse and nurses' aid who were in the medicine room on the fourth floor heard a loud crash of breaking glass. They ran into the corridor, noticed the door of the adjacent unoccupied room closed, although it should have been open, opened the door, entered the room and turned on the light. The insured was in the window; the glass was out. He was holding each side of the window with his hands. The nurse ran toward him and shouted "stop * * don't jump". There is some variance in the testimony of the nurse and of the nurses' aid with respect to the exact position of the insured on the window sill and as to whether he jumped or merely let go and fell from the window. The incident happened in a matter of seconds. The window was of the steel casement type and in two sections, each of which was about 60 inches high and 15 inches wide. Each half of the window could be cranked open no more than 6 inches. The sill or ledge was mostly inside of the room, about 13 inches in depth and about 30 inches above floor level.

Upon our review of the record under the standards announced, we hold there was sufficient evidence to take the case to the jury on the question of whether the insured's death was the result of accident as defined in the policies or excluded by the provisions covering death resulting from self-destruction, physical or mental infirmity. We cannot say, as a matter of law, on the evidence, that it would have been irrational for the jury to conclude that the insured broke the glass, climbed on the window sill seeking to determine the possibility of making an exit from the hospital by dropping down from the window and that when he was discovered he became startled and accidentally let go and fell. We cannot say that such a conclusion is so speculative as to have no rational basis. The insured on two occasions, once on the very day, had attempted to leave the hospital. Although the record establishes that he was confused and his memory bad there is no evidence of mental infirmity. On the contrary there is direct testimony that he was not emotionally unstable, was not depressed and had no suicidal tendencies. As was said in Kettlewell v. Prudential Insurance Co., 4 Ill.2d 383, 122 N.E.2d 817, 823:

> "The evidence here is clearly consistent with an hypothesis of death by accident or carelessness. Reasonable minds could conclude that this pedestrian had no suicidal intent. Twelve jurors who saw and heard the witnesses decided it was not suicide. The trial court who saw and heard the witnesses approved this finding."

It is our conclusion that the District Court did not err in denying defendant's motion for a directed verdict and for judgment notwithstanding the verdict.

Over defendant's objection the District Court gave three instructions concerning the legal presumption against suicide. The jury was instructed that the law presumes all men to be "animated by the instinct of self-preservation" and further that when there is "no proof" whether injuries causing death were "accidental or self-inflicted" the "presumption is that they occurred by accident." It was also instructed that the burden was on defendant "to overcome the presumption against suicide" by evidence showing that death was self-inflicted or showing the existence of circumstances leaving room for "no other reasonable hypothesis than that of suicide". In Kettlewell v. Prudential Insurance Co., 4 Ill.2d 383, 392, 122 N.E.2d 817, 819, it was pointed out that:

> "It has been uniformly held that the legal presumption against suicide. vanishes when contradictory

evidence is produced, and thereafter, the question is to be decided on the evidence without resort to the presumption (Guardian Mutual Life Ins. Co. v. Hogan, 80 Ill. 35; Osborne v. Osborne, 325 Ill. 229, 156 N.E. 306)."

In the Guardian Mutual case cited in Kettlewell the issue was whether the insured had taken arsenic inadvertently or deliberately and there was evidence of the latter. The court said:

"The defendant was entitled to have the issue it made on this question fairly submitted and decided, upon a preponderance of the evidence adduced. An instruction to a jury what the 'presumption of law' was, upon a question of disputed fact, was commented upon in Garrettson v. Pegg, 64 Ill. 111, and condemned, as being extremely likely to mislead the jury."

■■ Here there was a conflict in eye witness testimony as to whether the insured jumped from the window or merely let go and fell. And where there is evidence on a controversial issue, the case should go to the jury on the evidence submitted and the inferences to be drawn therefrom without giving to one party the additional benefit of such an instruction, the effect of which tilts the scales unjustly in favor of the plaintiff. Kettlewell v. Prudential Insurance Co., 6 Ill.App.2d 434, 439, 128 N.E.2d 652.

■ In addition the instructions complained of were in the form of abstract propositions and are subject to the criticism made in People v. Corbishly, 327 Ill. 312, 158 N.E. 732, 743, that:

"The vice of giving abstract propositions of law as instructions to a jury is that the jury are too liable to arrive at the conclusion that the court thinks that the facts stated in such an instruction on which the proposition of law is based have been proved, while the law is that the jury should be required to make the proper finding on such facts."

We have considered the cases relied upon by the plaintiff such as Wilkinson v. Aetna Life Insurance Co., 240 Ill. 205, 88 N.E. 550, 25 L.R.A.,N.S., 1256, where there was no evidence contrary to the presumption. The doctrine of such cases is not applicable under the evidence in this case.

■ The variance in the testimony of the nurse with her pre-trial deposition was not such as in our opinion warranted the instruction given on impeachment of a witness. Her omission in the deposition that she shouted "don't jump" was not a material contradiction.

It was reversible error to give the instructions complained of and the District Court for that reason should have granted defendant's motion for a new trial.

The judgment is reversed and the cause remanded with directions that defendant's motion for a new trial be allowed.

Reversed and Remanded With Directions.

SCHNACKENBERG, Circuit Judge (dissenting).

The conflicting evidence in the record made this a classical case for determination by a jury. There is evidence to support the verdict arrived at and approved by Judge Igoe, an experienced jurist. I find no error in the instructions which he gave to the jury. American Home Circle v. Schneider, 134 Ill.App. 600, 604; Goldstein v. Metropolitan Life Ins. Co., 324 Ill.App. 168, 57 N.E.2d 645, leave to appeal denied 326 Ill.App. XV; Wilkinson v. Aetna Life Ins. Co., 240 Ill. 205, 211, 88 N.E. 550, 25 L.R.A.,N.S., 1256. I do not believe that the majority opinion is sustained by Kettlewell v. Prudential Ins. Co., 1 Ill.App.2d 300, 117 N.E.2d 568. This is true for several reasons. I mention only one; the opinion of the Illinois Appellate court says, 1 Ill.App.2d at page 307, 117 N.E.2d at page 571, "None of the testimony offered on behalf of the plaintiff throws any light upon the factual situation." That statement distinguishes the Kettlewell case from the case at bar. Here there is considerable evi-

dence on behalf of plaintiff to explain that Professor Ziegler at the time of his death as well as prior thereto engaged in several attempts to escape from the hospital, a fact which is inconsistent with the suicide theory and which was evidently persuasive in the minds of the jury.

I would affirm the judgment of the district court.