JOHN ARGUS, Appellee, v. WARE & LELAND, Appellants.

**Principal and agent:** RATIFICATION: EVIDENCE. Where an agent exceeds his authority it rests with the principal in the first instance to either ratify or repudiate the act, and if he fails to repudiate it promptly he will be presumed to have ratified it and will be bound thereby. In this action plaintiff ordered defendant to buy one thousand bushels of grain but in transmitting the order a mistake was made and he purchased ten thousand bushels and so notified plaintiff, to which he made no reply, and subsequently ordered a sale of his holdings. *Held,* sufficient to authorize a finding of ratification.

**Change of venue:** MOTION: SUFFICIENCY. A motion to change the place of trial from a superior to the district court, of an action brought against a firm, to which the individual partners were not made parties, supported simply by affidavits stating merely that the partners were not residents of the county and failing to state that the firm was a nonresident, was properly denied.

**Payment:** ESTOPPEL. Payment by an agent to his principal of an amount concededly due him without condition will not prevent the principal from collecting any further sum found due, growing out of a disputed transaction.

**Appeal:** REVIEWABLE QUESTIONS. Where the only evidence in the record of misconduct in argument was contained in an affidavit attached to a motion for new trial, which was denied, the matter was not subject to review on appeal.

*Appeal from Shenandoah Superior Court.*—HON. GEORGE H. CASTLE, Judge.

SATURDAY, JUNE 8, 1912.

ACTION by plaintiff against the defendant as a brokerage firm to recover the profits inuring to the plaintiff upon the purchase and sale of grain in his behalf. There was a trial to the jury and a verdict and judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*Denver L. Wilson* and *Bowles & Bowles* for appellant.

*Earl R. Ferguson* and *C. R. Barnes* for appellee.

EVANS, J.—The defendant is a partnership, and is engaged as a brokerage firm upon the Board of Trade in Chicago. It maintained a local office at Shenandoah, Iowa. The plaintiff was one of its customers, and had on deposit with it $240 to protect his deals. On the morning of July 8, 1910, plaintiff ordered the purchase of one thousand bushels of September wheat at a stated price. This order was immediately executed. Later in the day, he ordered the purchase of another thousand bushels of September wheat. In the transmission of this second order from the Shenandoah office to the Chicago office, a mistake was made, and as the result of such mistake the defendant purchased for the plaintiff ten thousand bushels of September wheat, and telegraphic confirmation of the purchase of such amount was delivered to the plaintiff on the same day. The contents of this telegraphic confirmation were taken for granted by the plaintiff, who put the same in his pocket without reading, and did not discover the mistake until the next day. Neither did the defendant nor its agent discover that any mistake had been made until the next day. It is the contention of the plaintiff that when he discovered the mistake on the next day he ratified the purchase. On the other hand, it is the contention of the defendant that there was no ratification,

and that upon discovery of the mistake the defendant immediately corrected the same by selling the ten thousand bushels and repurchased one thousand bushels at the price of the previous day. The market was some two or three cents higher on July 9th than on July 8th, and there was a substantial profit in the mistake. The one question in the case is: Was there sufficient ratification of the mistaken purchase by the plaintiff to make the contract binding upon him, and therefore to entitle him to its profits? Taking the view of the testimony most favorable to the plaintiff, it appeared that the mistake was brought to his attention about ten o'clock on the morning of July 9th. He made no objection thereto. The market for the day was in advance of that of the previous day. He thereupon instructed the defendant to sell his "holdings." This order was executed the same day, and telegraphic confirmation made. He was credited, however, with the sale of only 2,000 bushels and the profits thereon. He demanded an accounting for the sale of the remaining nine thousand bushels.

I. Inasmuch as the defendant had actually made a purchase on behalf of the plaintiff of ten thousand bushels and reported the same to him accordingly, it rested with the plaintiff in the first instance to ratify or to repudiate. Mechem on Agency, section 154. If he failed to repudiate promptly, he would be deemed to have ratified, and the contract would become binding upon him. *Clews v. Jamieson*, 182 U. S. 461 (21 Sup. Ct. 845, 45 L. Ed. 1182), 31 Cyc. 1285. In the *Clews* case, *supra*, the rule is stated as follows:

> A principal can adopt and ratify the unauthorized act of his agent, who in fact is assuming to act in his behalf, although not disclosing his agency to others; and when it is so ratified it is as if the principal had given an original authority to that effect, and the ratification relates back to the time of the act which is ratified. He must

*[margin note: I. PRINCIPAL AND AGENT: ratification: evidence.]*

disavow the act of his agent within a reasonable time after the fact has come to his knowledge, or he will be deemed to have ratified it. . . . And it is no answer to the ratification that prior to its taking place the principal is not bound; and hence there is no right on the part of the other party to enforce, as against him, the unauthorized act of his agent. . . . The failure of the complainants to repudiate the action of their agents in the sale immediately after it was reported to them would operate as a ratification.

It is not claimed by defendant that there was any actual repudiation by plaintiff. The claim of the defendant is that, immediately upon discovering the error, it corrected the same of its own motion. If this correction had been made before plaintiff had been notified of the puchase, a different question would be presented. If the correction when made had been reported to the plaintiff, and he had acquiesced therein, a different question would be presented. It does not appear from this record that there was any notification to the plaintiff of a correction of the mistake before the order to sell his "holdings" was received and executed. The fact that the mistake was already profitable when first discovered by both parties is a circumstance in favor of the theory of ratification by plaintiff, and a jury would be warranted in drawing some inference therefrom. We think there was sufficient evidence to sustain a finding of ratification by the jury. The defendant's motion for a directed verdict was therefore properly overruled.

II. The action was brought in the superior court of Shenandoah. The defendant filed a motion for a change of venue under the provisions of section 261. The motion

2. CHANGE OF VENUE; motion: sufficiency.

was overruled, and complaint is made of such ruling. The defendant is in no position to complain of this ruling. The record shows it to be a partnership firm. It was sued in that capacity alone. None of its members were included as defendants.

The affidavit filed in support of the motion quite ignored the express provisions of section 261. It failed to state the defendant firm was a nonresident of the city of Shenandoah. Nor did it state where its principal office or place of business was. It only stated that the individual members of the same were residents of Chicago. The question of the residence of the defendant firm was left to mere inference. The statute is very simple in its requirements, and should have been followed. The residence or nonresidence of a partnership firm is not necessarily determined by the place or places of residence of individual members of such partnership. *Ruthven v. Beckwith*, 84 Iowa, 715. The point here urged is therefore not available to the appellant.

III. It was also pleaded by the defendant that on July 1,6, 1910, it closed its account with the plaintiff and paid to him the sum of $322.50 as being the amount then standing to his credit. It is urged in argument that this amounted to a settlement, and that plaintiff is estopped thereby from now claiming more. It is sufficient to say that the answer did not in terms plead a settlement nor an estoppel. Nor does it appear that the $322.50 thus paid involved any item of dispute. Such amount was concededly due the plaintiff, regardless of the result of the present dispute. No conditions appear to have been attached to its payment or to its acceptance. The plaintiff was then claiming the profits for which this suit was later brought. The defendant did not demand that he relinquish such claim as a condition to the payment of the amount concededly due him. Nor is there anything in the record from which the jury could find that such payment was intended as a settlement of this controversy. Other minor points are stated by appellant's counsel without elaboration. None of them furnish ground of complaint to appellant.

3. Payment: estoppel.

As to the alleged misconduct of the counsel for appel-

lee in argument to the jury, we find no record, except an affidavit, which is attached to the motion for a new trial. In view of the adverse ruling by the trial court upon such motion, the appellant is left without a record of such alleged misconduct. We can not reverse the trial court upon a mere affidavit. We find no error in the record.

**4. APPEAL: reviewable questions.**

The judgment below must therefore be *affirmed.*