**Mark Greer, Appellee, v. Shell Petroleum Corporation, Appellant.**

Opinion filed June 8, 1935.   Rehearing denied September 5, 1935.

THOMPSON, MITCHELL, THOMPSON & YOUNG and R. FORDER BUCKLEY, all of St. Louis, and ARTHUR ROE, of Vandalia, for appellant.

WEBB & ALBERT and MATHENY & WELKER, all of Vandalia, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

In July, 1931, appellant, Shell Petroleum Corporation, awarded to Ross Carson a contract to paint certain storage tanks at its Vandalia plant.   Carson associated with himself three workmen named Lipsey, Logsdon and Snyder, and on July 31, while the four were in the act of painting one of the tanks, the scaffold upon which they were working gave way, and they fell to the ground and were severely injured.   Appel-

lee, Dr. Mark Greer, was called to treat them, and afterwards brought suit against appellant for the amount of his fee. He recovered a verdict for $1,850, which the court set aside, and upon a retrial of the cause had a jury's award in the sum of $1,917.50, upon which judgment was entered, and from which appellant appeals.

It appears from the evidence that immediately following the accident, the local agent of appellant caused appellee to be called to attend the injured men. There is some conflict as to whether Bennyhoff, the agent, said to call Dr. Greer, or simply summon a doctor. We think the jury were warranted, from the evidence, in finding that he directed that Dr. Greer be called. When the doctor arrived he caused the men to be removed to his hospital, where he thereafter treated them.

Earl Frank, who was a sort of district agent for appellant, and who had charge of several stations, among them the one at Vandalia, happened upon the scene while appellee was there, and helped load one of the men into the ambulance. Frank stated that he at once called up the head office of appellant at St. Louis and talked with D. A. Marshall, who was in charge of equipment and maintenance, and acquainted him with the facts of the accident; that he was asked by Marshall how the men were; was directed by him to render a written report of the occurrence, and also that if anybody talked to him of the accident, he (Frank) was to keep his mouth shut. He further stated that he rendered his written report to Marshall the next day, giving all the details as he had gotten them from Bennyhoff, including the fact that the men were being cared for by Dr. Mark Greer.

Bennyhoff, as an agent of appellant, owed his principal the duty of fully informing Frank, his immediate superior, of all the details of the accident, including the

fact that he had called appellee to take charge of the injured men; and Frank, in turn, was under a like obligation of fully reporting all such facts to Marshall. He testified that he so reported the facts, and the jury, under the authority of *Toledo, W. & W. Ry. Co. v. Prince,* 50 Ill. 26, had the right therefrom to find that he reported them in full, including the employment of appellee. Other authorities sustaining such proposition are *Henry v. Allen,* 151 N. Y. 1, 45 N. E. 355; *Pringle v. Modern Woodmen of America,* 76 Neb. 384, 107 N. W. 756; *Bierce v. Red Bluff Hotel Co.,* 31 Cal. 160.

Aside from this, however, we think there is further evidence that such employment was reported by Frank. On August 10, 1931, one Nightengale, a claim agent of appellant, was sent by Mr. Cooper, who was in charge of insurance compensation claims in the St. Louis office, to Vandalia to investigate the case and obtain a report from Dr. Greer,—not the surgeon in charge, but Dr. Greer by name. This proves conclusively that the head office knew that Dr. Greer was attending the wounded men, and inasmuch as the only report or communication from Vandalia to the head office, concerning the injured men, as shown by this record, between the date of the accident and the sending of Nightengale, was the report of Frank, it may be reasonably inferred that the latter reported the employment of Dr. Greer by Bennyhoff. We think this fact is fully proven by the evidence.

It further appears that appellee inquired of Frank, as the highest officer of appellant in the Vandalia area, to whom he should look for his pay, and was told by the latter that appellant would compensate him for treating the men; also, appellee testifies that Nightengale told him to take good care of the men and render a report of their condition to appellant, and that pursuant thereto reports were at once prepared and

mailed to appellant. Nightengale denies telling appellee to take good care of the men; however, in the light of the surrounding circumstances, we are of opinion that the jury were justified in finding that he in fact made the statement. It is thus evident that appellee treated the injured men, expecting to be paid therefor by appellant.

Appellant takes the position that even if Bennyhoff or Frank, or both of them, hired appellee, their action was unauthorized, and never ratified by appellant.

Whether such employment was afterwards ratified, was a question of fact; *Goodell v. Woodruff*, 20 Ill. 191; and the jury's finding, in effect, that there was, will not be disturbed unless contrary to the manifest weight of the evidence. As bearing upon the question, is the circumstance of Nightengale's visit to Vandalia at the direction of Cooper to investigate the case and obtain a report of the condition of the injured men from appellee. Report, such as here mentioned, means an account resulting from examination, made by request or direction. 54 Corpus Juris, 676.

It is common knowledge that reports of such character are rendered under a sense of duty and because of an existing obligation so to do, and that they are ordinarily asked for, only by those who by reason of superior position, or the relation of employer and employee, have a right to demand that such an account be rendered.

It does not admit of argument that a surgeon in charge of a case will not commonly render a written report of the condition of his patient, except to one who is his superior or his employer, nor, in the usual affairs of men, does one ask a surgeon for such a report unless he be the doctor's employer or in some relation where the law warrants such request. Were a mere disinterested stranger to demand such an account, it would be regarded as impertinence.

We cannot ascribe to the higher officers of a large and important business concern such as appellant, a desire or purpose to play so meddlesome a role, and must conclude that when, under the circumstances as shown by the evidence in this case, they sent their claim agent to demand a report from appellee as to the condition of his injured patients, the action was inspired by a sense of responsibility and because they regarded him as in their employ, in the care and treatment of the men.

Without this, it appears that appellee was permitted to minister to these men until they were healed and discharged from further treatment. At no time, from the day of the accident until he discharged the last man, was appellee ever notified by appellant that he was not in its employ, nor that his services were no longer desired. He was allowed to treat the injured, and the agents of appellant called upon him to inquire as to their condition, and told him to take good care of them. The circumstances fully warranted appellee in believing that appellant would recompense him for his services. The officers of the latter, as business men, knew that he would expect to be paid, and that naturally he would look for compensation to the corporation whose agent first called him to the case, and especially where the corporation sent its claim agent to him in order to secure his report as to the condition of the patients.

Under such circumstances the law required that if appellant desired to save itself from being responsible, it should, when it received the report of the accident and was advised that its agent had engaged appellee to treat the men, or within a reasonable time thereafter, have dissented from the action of the agent in employing appellee, and have so informed the latter, instead of permitting him to continue in the employment in the belief that appellant was satisfied there-

with. Under such circumstances, silence or failure to disaffirm is sufficient evidence to justify a jury in finding that the employment by the agent was ratified by the principal. *Toledo, W. & W. Ry. Co. v. Prince, supra; Indianapolis & St. L. R. Co. v. Morris,* 67 Ill. 295; *Cairo & St. L. R. Co. v. Mahoney,* 82 Ill. 73; *Chicago Consolidated Traction Co. v. Mathews,* 117 Ill. App. 174; *Terre Haute & I. R. Co. v. Stockwell,* 118 Ind. 98, 20 N. E. 650; *Clews v. Jamieson,* 182 U. S. 461; *Argus v. Ware & Leland,* 155 Iowa 583, 136 N. W. 774; *Northwestern Lumber Co. v. Cornell,* 99 Wash. 250, 169 Pac. 590.

In *Eau Claire Canning Co. v. Western Brokerage Co.,* 213 Ill. 561, 591, it is said: ''In all the varied business transactions of men, wherever the relation of principal and agent exists, it is the duty of the principal to repudiate the unauthorized act of his agent as soon as he reasonably can after it has come to his knowledge, or he will be held to have ratified it.''

It is our conclusion that the proof establishes the fact that the employment of appellee by the agents of appellant was ratified by the latter, and that the jury were warranted in so finding. Moreover, this case has been twice tried, and two juries have found the issues the same way upon conflicting testimony. Where such is true, the settled rule appears to be that the finding, upon review, will not be disturbed as contrary to the weight of the evidence; *Doerr v. City of Freeport,* 239 Ill. App. 560, 567; and as held by this court in *Meier v. Cleveland, C., C. & St. L. Ry. Co.,* 206 Ill. App. 285. The employment having been ratified by appellant, it is unnecessary to consider whether it was in the first instance authorized or not.

Objections were made to certain parts of the court's charge, particularly to paragraphs 2, 3, 4, 5 and 6. The objections made to paragraphs 2, 3 and 5 were that they did not correctly state the law and were not

supported by the evidence. Section 67 of the Civil Practice Act, Cahill's St. ch. 110, ¶ 195, requires that objections to the court's charge shall be specific, or they will be deemed waived. The word "specific," as thus employed, means "particular" or "precise." Black's Law Dictionary, p. 1100. The evident purpose of the requirement of said section 67, that the objections be specific, is to point out to the court wherein the alleged error lies, to the end that same may be obviated; and an objection which fails to do so is not in compliance with the statute.

An objection that a paragraph of a charge is an incorrect statement of law is merely a claim that it is erroneous, without informing the court of what the error consists, and does not afford the court any information which would enable him to correct the error. Such objections in our opinion do not meet the requirements of the statute.

The objection that the paragraphs are not supported by the evidence is untenable; we think there was sufficient proof in the record upon which to base the same.

The objection to paragraph 4, which stated the law as we have found it to be in relation to ratification by a principal of the unauthorized act of his agent, that such an act could not be ratified, is contrary to the established rules of law. Paragraph 6 was objected to generally, no basis of objection being assigned; hence appellant cannot avail itself of same, under said section 67 of the Civil Practice Act.

As to said paragraph 6, appellant suggested to the court that there be incorporated therein a direction to the jury to consider certain records of the industrial commission admitted in evidence, as bearing upon the question of the interest of the witnesses Carson, Logsdon, Snyder and Lipsey. Such an inclusion would have caused the paragraph to violate the rule that an instruction which informs the jury they may consider

particular items of evidence as bearing upon the interest of a particular witness, is improper. *Sullivan v. Eddy,* 164 Ill. 391; *Zapel v. Ennis,* 104 Ill. App. 175. The court rightly rejected the suggestion.

Upon a careful consideration of this record we conclude that the judgment is right, and it will be affirmed.

*Judgment affirmed.*