Frances Thiel, Appellee, v. Material Service Corporation, Appellant.

Gen. No. 37,878.

Opinion filed December 27, 1935. Rehearing denied January 7, 1936.

MILLER, GORHAM, WALES & ADAMS, of Chicago, for appellant.

FINN & MILLER, of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

The defendant, Material Service Corporation, is here on appeal from a judgment of $15,000, which was entered in the superior court of Cook county on the verdict of a jury in an action of trespass on the case. The plaintiff was riding as a guest in an automobile and her injuries occurred when the automobile and a truck, driven by a man named Stine, collided.

The cause was tried upon plaintiff's amended declaration, in which five defendants were named, two of which were dismissed from the case, and the jury returned a verdict of not guilty in favor of John Beiderer and H. C. Bollman, defendants, and guilty against the Material Service Corporation for the amount herein stated.

The facts appearing from the evidence are that a collision occurred August 16, 1930, on Archer avenue near the entrance to Bethania Cemetery, in Cook county, between the automobile in which the plaintiff was riding as a guest, and a truck driven by Stine. The principal issue in the case as stated by the defendant is whether the Material Service Corporation can be held liable under the doctrine of *respondeat superior* for the negligence of Stine in the operation of the truck, or the defendant can be held liable for lack of repair to the truck or its unsafe condition. For the purposes of this appeal, the defendant concedes that there is evidence from which the jury might find that Stine was negligent, or that the truck was in an unsafe condition.

John Beiderer was the owner of the truck involved in the accident. He was in the trucking business, and the truck had his name printed on the body of the cab. H. C. Bollman was a cartage contractor, who had a written contract to haul the stone and other materials of the Material Service Company, which was in the business of selling such materials. The contract provided, in substance, that Bollman would haul all the stone from certain named quarries as directed by the Material Service Corporation, and that Bollman had the exclusive right to haul from these quarries. Bollman was to be paid for hauling at certain rates per mile measured from the Peoples Crushed Stone Co. quarry by a straight line to the point of delivery regardless of detours. The mileage was so measured

regardless of the quarry from which the delivery was made, except in the case of the Elmhurst-Chicago one, from which the mileage was measured direct. It was provided in the contract that Bollman would own and operate at least 15 trucks, and that he would furnish all necessary trucks up to the number of 30. By the contract, Bollman was to be paid for all crushed stone in the last half of the month on the 10th of the succeeding month, and for all stone in the first half of the month, on the 25th. He was to be paid "whether such cartage be performed by the motor trucks owned by Bollman or by subcontractors hired by him to do such work." It was agreed that Bollman should at all times employ competent men in the operation of the trucks, should carry public liability insurance on all hired trucks, and compensation, public liability and property damage insurance on all trucks owned and operated by him. It also appears from the contract that all trucks employed in the delivery of materials should carry a sign bearing the name "Material Service Corporation," to be furnished by that company. The contract was for two years from March 18, 1930.

Stine was a truck driver who had hauled materials from the Material Service Corporation yards on one or two occasions prior to Bollman's contract. The contract was entered into, as we have stated, in March, 1930, and in June of that year Stine hauled materials from the yards of the Material Service Corporation with a truck owned by Frank Beiderer, who was also in the trucking business. The compensation for this hauling was apparently paid in the same manner as the subsequent hauling, namely, to Bollman. He deducted his commission and paid the balance over to Beiderer. This truck was damaged in an accident and could not be used. Stine went to Frank's brother, John Beiderer, and asked if he could get his truck to use in hauling. All John Beiderer knew of Stine was that he

had worked for his brother. John Beiderer gave him the truck and Stine continued to haul from the Material Service yards. In doing this hauling, he followed the usual procedure. He received a ticket from the shipping clerk of the Material Service Corporation showing the destination of his material. He would have one copy signed by the person to whom the material was delivered and return the signed copy to the office of the shipping clerk. Bollman's contract required that all cartage be evidenced by such signed receipts. These tickets were collected by Bollman, and from them he made up bills to the Material Service Corporation. Bollman had about 17 trucks, which he owned, and there were some 18 or 20 other trucks owned by about a dozen different owners. All of these trucks followed the same general plan, except that the signed delivery tickets for the trucks owned by Bollman were left directly at his office. Separate bills were rendered by Bollman for the trucks he owned and for each other owner of trucks. These bills were made up the first and fifteenth of each month to cover cartage of the preceding half month. Bollman rendered five bills, some of several sheets marked John Beiderer, covering the period from the 16th of June, 1930, to the end of August. These bills were computed in accordance with the written contract with Bollman. Material Service Corporation sent Bollman its checks for the amount of these bills, and he deposited the checks to his account. Bollman issued his checks to and paid John Beiderer for the amounts so received less Bollman's three per cent commission. Beiderer paid Stine at the rate of $7.50 a day, the regular union wage for truck drivers. He paid Stine his wages for the day of the accident.

During this period from the middle of June until the end of August, Stine appeared at one of the yards of the Material Service Corporation around six-thirty or seven in the morning. He awaited his turn for a load,

and when he had one, took a delivery ticket showing the destination. He chose the route he would take himself. He would make the delivery, obtain the signed delivery ticket, and return for another load. When the truck needed gas or oil he obtained the same from a certain filling station and charged the amount to John Beiderer. John Beiderer paid for the gas and oil, as he did for all upkeep and repairs on the truck. At night, Stine stopped work around 4:30, and took the truck back to the hotel or rooming house where he lived. He let it stand out near there all night.

On August 16, 1930, Stine obtained a load of stone at one of the yards of Material Service. He delivered the stone at Keene and 123rd street. He was coming back empty northeast on Archer avenue on his way to lunch which he usually ate at a place in Lyons. The truck was carrying the sign of the Material Service Corporation.

The evidence of witnesses was conflicting as to how the accident happened, but it is clear the truck slowed down and skidded across on the southbound side of the street and collided with the car being driven southwest by Mrs. Strieder in which the plaintiff was riding. The evidence of a defective or unsafe condition in the truck was that the brakes locked the wheels and caused the skidding.

After the accident, John Beiderer paid for the repairs to the truck. Stine with Beiderer's knowledge and consent continued to haul materials from the Material Service Corporation yards. Bollman rendered the bill for hauling for the last half of August, received his compensation and paid Beiderer the amount less the commission. This bill and this payment included the delivery which Stine had made at Keene and 123rd street on August 16, 1930. Beiderer continued to pay Stine at the rate of $7.50 a day.

Shortly before Labor Day, Stine had his cousin do the hauling while he went away for a day or two.

While Stine was away, Beiderer discovered that the cousin was hauling some furniture for his relatives in the truck. Beiderer thereupon took the truck away and kept it.

There is evidence of the steps taken by Stine before he started hauling in the early summer of 1930. He went to a shipping clerk named Heinie and asked if the work would be available if he got a truck. Thereafter he used Frank Beiderer's truck. When that was wrecked, Stine went to Leonard Buck, a shipping clerk of the Material Service Corporation, and asked if he could haul. Stine testified that Buck said that Bollman's consent would have to be obtained, and that Buck obtained it by telephone in the presence of Stine. Bollman testified that there was no such conversation. In any event, Bollman shortly thereafter knew that John Beiderer's truck was hauling because he received the delivery tickets and began billing for the work of Beiderer's truck. Bollman testified he did not like the idea of Stine hauling there with Beiderer's truck, and he told Buck, the shipping clerk, to get rid of him as soon as possible. However, Bollman continued to get the delivery slips and render bills for the hauling done by Beiderer's truck for two months thereafter.

There is evidence that Stine himself determined what routes he would take and the manner in which he would drive the truck. The only instruction in this respect evidenced by the record was the testimony of Stine that Beiderer told him to take care of the truck. Bollman gave no instructions to the drivers of his own trucks or any of the others driving under his contract except to report and deliver as indicated by the delivery slips.

The defendant's theory is that the Material Service Corporation is not responsible under the doctrine of *respondeat superior* for the negligent driving of the automotive truck by Stine, which was the cause of

the injury to the plaintiff, and for reasons, urged that the doctrine of *respondeat superior* is only applicable where the person sought to be charged has the right to control the action of the person committing the injury.

This question has been before the courts of appeal in this State, and in order to properly consider the question now before this court, it is well to have in mind the rules which apply to this doctrine. One of the factors that must be considered is whether the worker is an employee or an independent worker. If the employer directs where to unload and how the unloading is to be done and retains the right to discharge the employee, the relationship of employer and employee is established. *Van Watermeullen v. Industrial Commission,* 343 Ill. 73. In order to hold the employer liable under this doctrine, the employee must be subject to the employer's control as to the terms, kind, results and duration of employment, which must be sufficient to establish the relationship of employer and employee. It is also important in discussing this question to take into consideration that when the employer had given instructions to the employee, the employee could proceed with the work without the necessity of any interference by the employer, and that when the work is not of a character requiring a great deal of supervision, failure to supervise does not change the relationship of employer and employee. *Franklin Coal & Coke Co. v. Industrial Commission,* 296 Ill. 329.

To determine whether the defendant is liable for the negligent operation of the truck which caused the injury to the plaintiff, this court must consider the evidence. We find from this record that Stine, who was the driver at the time of the accident, applied to the Material Service Corporation, for work; that he talked to a shipping clerk named "Heinie" and obtained a truck from Frank Beiderer and proceeded to haul

stone, and used for that purpose Frank Beiderer's truck; that this continued until the truck was wrecked, when he again applied to the same company and talked to Leonard Buck, a shipping clerk of the defendant, and he again asked for work of hauling. Stine testified that Buck stated to him that Bollman, who had the contract to do hauling and to supply the trucks, would have to give his consent, and that the agent of the defendant, Buck, obtained Bollman's consent by use of the telephone in the presence of Stine. This, however, was disputed by Bollman. Subsequently, Bollman learned that John Beiderer's truck was hauling, because he received delivery tickets and began billing for the work of Beiderer's truck. Bollman directed Buck to discharge Stine, which he did not do.

There is evidence in the record, as we have indicated, that Stine, the driver, was told to go to work with a truck, and it appears that his employment commenced from the time he had a talk with the man he called "Heinie." The defendant, however, contends that the contract of the defendant with Bollman is material, for it bears upon the question of the right of the defendant to employ men to haul materials covered by this contract. That may be so as between the defendant and Bollman. However, the question of the breach of the contract is not before us. The matter we are obliged to determine is whether Stine was employed by the Material Service Corporation to haul materials by the use of the truck. That he was so employed is evident from the fact that Bollman did not send Stine to defendant's quarry to work or haul material; that he did not know that he was so employed until he learned at the office of the Material Service Corporation that the name of Beiderer appeared on a delivery ticket; that he spoke to the shipping clerk, Leonard Buck about the truck being used, and asked him to discharge Stine, who was driving the truck, but that Buck because of reasons refused to discharge Stine. This all happened

prior to the accident, and the record discloses the following facts sufficient for a jury: First, the employment by Stine to do hauling by the use of a motor truck; secondly, the insistence of Bollman that Stine be discharged by Buck, the agent of the defendant, and his refusal to discharge him. This evidence is in the record. It is also in the record that Stine was directed, in the operation of his truck when he appeared at the defendant's yards, as to the loads he was to receive and deliver, and the time within which all this was to be done. From the application of the rule of law outlined herein, it would seem that the evidence tends to establish that the defendant is liable for the negligent operation of the motor truck by Stine as its driver at the time of the accident, and that question of fact is one for a jury.

The defendant urges that the court erred in instructing the jury on the law relating to master and servant and independent contractors. The defendant also questions the giving of a certain instruction presented to the court by the plaintiff as being reversible error. The plaintiff, however, has called to our attention the fact that objections to the instruction were not specific, and under sec. 67 of the Civil Practice Act and 27 of the Rules of Court, it does not appear that the specific objection to the instruction was made before the jury retired, and by reason of that failure the defendant is in no position to urge that the giving of the instruction was erroneous. *People v. Schneider,* 360 Ill. 43; *People v. Reeves,* 360 Ill. 55; *Paulick v. National Bank of Republic,* 279 Ill. App. 160; and *Greer v. Shell Petroleum Corp.,* 281 Ill. App. 238.

The ruling of the trial court in refusing to give the special interrogatory is questioned by the defendant. The form of this interrogatory is as follows:

"Did the Material Service Corporation have the legal right to control the manual operation of the

motor truck upon the highway at and before the time and place of the collision?''

It would seem that the form of the special interrogatory presented left it to the jury to determine whether the Material Service Corporation had a legal right to control the operation of the motor truck. The question should be directed to questions of fact, and then only to ultimate facts involved in the litigation. *Pressley v. Bloomington & Normal Ry. & Light Co.*, 271 Ill. 622; *City of Beardstown v. Clark*, 204 Ill. 524; *Chicago & N. W. Ry. Co. v. Dunleavy*, 129 Ill. 132.

Other objections have been called to our attention, and it is contended that the court erred in the conduct of the trial. We have considered the questions complained of, and are unable to find that the court by its act committed error in its ruling upon the questions to which objections were made.

Finally, the defendant complains of the excessive amount of damages allowed by the jury. From the evidence relating to the injuries suffered by the plaintiff, we find that the plaintiff's left leg is enlarged from the knee down, including both the knee and the ankle. The knee joint is limited as to motion, and the leg is practically stiff. In order to be able to walk, she has to throw the knee from the hip, the knee being of no assistance in taking a step. This causes a considerable strain on the spine, and gives rise to continued and repeated pains in the back. Before the injury the plaintiff was a music teacher, and in the pursuit of this occupation she has been greatly handicapped because of her inability to get around to her pupils and to use the pedal of the piano with this stiff leg. There is evidence that this condition of stiffness is permanent and incurable. The total expense of medical services as a result of this injury was from $1,500 to $1,600, and we are unable to find from the record that the amount allowed by the jury was excessive.

From an examination of this record and the questions involved, we do not find that there was such error in the court's ruling upon the questions called to his attention, or upon the objections called to our attention, nor the remarks of counsel in the presence of the jury, such as would justify this court in reversing the judgment; it will, accordingly, be affirmed.

*Judgment affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.