## SWINGER v. FIRMAN EQUIPMENT CORPORATION.

No. 6285.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1938.

Rehearing Denied Feb. 14, 1938.

David E. Rosenfeld, of Terre Haute, Ind., Claycombe & Stump, of Indianapolis, Ind., and Acton, Acton & Baldwin, of Danville, Ill., for appellant.

Cotton & Nichols, of Paris, Ill., and Jones, Grant & Jones, of Danville, Ill. (Paul F. Jones, of Danville, Ill., and Robert F. Cotton and Harold E. Nimz, both of Paris, Ill., of counsel), for appellee.

Before EVANS, SPARKS and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

This action involves an award of damages to appellee against appellant. It was based upon the alleged negligence of appellant's agent, Pierce, in the operation of its motor truck, which caused the death of appellee's husband. The cause was tried to a jury and a verdict was rendered in favor of appellee for the benefit of herself and infant son. Judgment was thereupon rendered upon the verdict for appellee, and from that judgment this appeal is prosecuted.

The following facts are supported by substantial evidence: The accident occurred on January 26, 1936, at 3:30 a. m., about 7 miles north of Paris, Ill. Pierce, appellant's employee and agent, driving appellant's new 1936 White truck, left Sullivan, Ind., for Quincy, Ill., at about 10 or 10:30 p. m. of the evening before. The truck was a straight one and a half ton capacity truck with inclosed cab and flat bed, 13 feet long, and about 7½ feet wide, with no sides or ends. Its total length was 23 feet. The chassis was blue but the bed was unpainted. It had a reflector on its back end 2½ feet from the ground, and 5 or 6 inches in diameter.

The night of the accident the temperature was about 14 degrees below zero. The driver stopped at Terre Haute for about one hour to get warm, and upon resuming his journey he had no difficulty in starting his engine. About 5 miles northwest of Terre Haute he started down Coal Creek hill. When he neared its foot, his lights suddenly went out and the motor stopped. This was the first time he had had any difficulty with the truck, and he alone had driven it. He spent about an hour making adjustments and succeeded in starting the motor, and thereupon the lights immediately went on. He drove to Paris, Ill., where he stopped and examined his lights. He knew there were garages in Paris, but he did not seek assistance from any of them. Everything appeared to him to be functioning properly, and he drove north out of Paris, on Illinois route 1.

When he reached a point about 7 miles north of Paris, and while driving down an incline, the motor again stopped and the lights went out. He coasted to the foot of the hill, crossed a culvert, and continued to coast to a point 39 feet north of the south side of the culvert, where his truck stopped without the use of brakes, with all four wheels on the pavement east of the center line.

At the point where the truck stopped, the shoulder on either side of the pavement is 6½ feet wide. From the highest point on the hill to where the truck stopped there is an elevation of 18.35 feet in a distance of 1,150 feet. The elevation at 500 feet is 8.42, at 400 feet 5.97, at 300 feet 3.41, at 200 feet .99 and at 100 feet it is .08 of a foot. There are no curves in the road between a point 1,600 feet on each side of where the truck stopped.

The deceased in company with Lowell Mann left Robinson, Ill., on route 1, about 2:10 a. m. of the same morning in a 1931 model Buick straight eight coupé. The deceased drove his car all of the time to the point of collision. He was thoroughly familiar with route No. 1, which runs in a general northerly and southerly direction and is surfaced with brick to the width of 16 feet. He was driving at a speed of 45 miles an hour, or 66 feet a second. The lights and brakes of his car were in good condition. The night was fair and the visibility was good. On level surfaces his lights would illuminate an object from four to five hundred feet ahead of him. However, just south of the scene of the accident his range of vision was reduced to approximately 150 feet because of the hill. His speed while driving down the hill was not reduced.

A heavy snow had fallen previously, and was still on the ground. It had not thawed, but the highway had been scraped, and there were a few inches of snow on the shoulder, but no bank of snow. The pavement was frosty, and there was ice on it in spots. There was also some packed snow on the pavement. However, immediately south of the rear of the truck there was no ice or snow on the pavement.

When decedent's companion first observed the truck they were about 40 or 50 feet south of the culvert, and not to exceed

89 feet from the truck, or less than one and a half seconds from the truck. Deceased made no effort to turn out until he had entered upon the culvert which was less than 39 feet, or about one-half second from the truck. When the truck came to a stop, its driver, observing the lights of the approaching coupé flash in his rear-vision mirror, and thinking that he had not sufficient time to get out his flares or other lights, immediately jumped out of the left door of his truck and started back towards the coupé shouting and waving his arms in an effort to attract decedent's attention. However, the collision occurred before he passed the rear end of the truck. When decedent was upon the culvert he turned his car to the right, and applied his brakes. His left door post came in contact with the right rear corner of the truck. The force of the impact demolished the left side of decedent's car and tore off the left door. The car then traveled down and across the east ditch, which was of a depth of 4 feet, through a wire fence, broke down several fence posts made of steel and wood, and stopped with its left side about 12 or 15 feet east of the east edge of the pavement, at a point 85 feet north of where the impact occurred.

These facts, of course, were contradicted by other evidence, but they are supported by substantial evidence and it was the jury's right to believe that which they deemed most worthy of credit. Having done so, we cannot disturb their conclusions in this respect. These facts are not such that we can say as a matter of law that appellant was free from the negligence as charged, and the jury's finding that appellant was negligent as charged is conclusive on us.

Appellant contends that deceased was guilty of contributory negligence which would bar recovery, in that he was driving at an excessive rate of speed. This also cannot be said to be true as a matter of law, and under the facts here disclosed, the jury said that he was not guilty of contributory negligence under all the circumstances of the situation.

Appellant urges, however, that as a matter of law decedent was required to drive in the nighttime at such a rate of speed that he could stop his car within the radius of his lights, and it assigns error upon the court's refusal to so instruct. In this we think there was no error. Some of the state courts have established such doctrine, but Illinois has not, and we are not inclined to favor it. The court's instructions as to negligence and contributory negligence were quite clear and explicit, and we think there was no error in refusing the requested instruction.

Further errors are assigned by appellant with respect to the court's refusing to permit the relation of conversations had with the truck driver after the collision. We think they were no part of the res gestae, but were a mere recital of past events, and were properly refused. It is also contended by appellant that the court erred in refusing to permit a written statement of one of the witnesses who had testified to be admitted for the purpose of impeachment. Among other things it contained a recital of certain statements of the truck driver which were no part of the res gestae. The court asked appellant's counsel if he were offering the entire statement, to which he answered yes, whereupon the offer was refused. In this there was no error.

Judgment affirmed.