## V. R. Jenisek, Appellee, v. Russell Riggs, Appellant.

Opinion filed July 10, 1943.

LEAHY, WALTHER & HECKER, of St. Louis, Mo., and WARNOCK, WILLIAMSON & BURROUGHS, of Edwardsville, for appellant.

WHITNEL, BROWNING, LISTMAN & WALKER, of East St. Louis, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This appeal is prosecuted to reverse a judgment of $5,000 rendered by the circuit court of Madison county, Illinois, in favor of appellee and against appellant. It is a personal injury suit. This is the second $5,000 verdict returned by a jury in this case. The first was set aside by the trial judge; the record gives no assignment of reasons for his action in setting it aside.

This appeal was taken direct to the Supreme Court upon the theory that a constitutional question was involved. That theory comes about by reason of the fact that some 10 days after the motion for new trial was heard and before decision thereon appellant asked leave of said court to amend his motion for new trial by alleging that par. (a) of sec. 148, ch. 95½, Ill. Rev. Stat., State Bar Association [Jones Ill. Stats. Ann. 85.180], is unconstitutional and void and violates Article 1 of Section 14 of the Constitution of the United States, and Section 2 of Article 2 of the Constitution of the State of Illinois, and said motion assigned numerous reasons why counsel say this section is unconstitutional. The trial court denied that right to amend. In denying this leave the trial court specifically pointed out that the proposed amendment attempted to present a new question as to the validity of the statute, not raised in the pleadings, not argued, not set forth in any instructions nor in the motion for new trial, and indeed not asserted at any time during the trial. The trial court also held that appellant had waived the validity of section 51–a and that his motion did not affect all counts of the amended complaint. We think

the trial court was acting entirely in his lawful discretion in denying said motion. If we had any doubt about that, which we have not, such doubt would be disposed of by the language of the Supreme Court in transferring this case to us. On page 293 of 381 Ill., in discussing this question the Supreme Court said: "Again, the right to question the validity of a statute may be waived either by act or omission (citing authorities). Defendant did not elect to challenge the validity of Section 51-a of the Motor Vehicle Act in his answer to plaintiff's amended complaint, did not urge a constitutional question during the course of the trial, and did not assign the asserted invalidity of the statute as one of the numerous grounds supporting his motion for new trial. Instead of presenting and preserving the question of the validity of the statute at the earliest opportunity, defendant did not attempt to attack its constitutionality until after an adverse verdict had been rendered against him and a ruling on his motion for a new trial was imminent. The first time, and apparently as an afterthought, in an effort to prosecute an appeal directly to this court, defendant sought to amend his motion for a new trial by adding a nineteenth reason, attacking the constitutionality of the statute. From the record it affirmatively appears that the constitutional validity of the statute involved in this cause was not presented for decision and was not passed upon by the trial court, and, further, was waived by defendant."

The facts in the case, stripped of all superfluous verbiage are about as follows: On the early morning of the date in question appellant's truck was being driven by its agent on a return trip from East St. Louis to Roodhouse, Illinois; the time was about 5:15 in the morning, and was near the hour of sunrise. Forrest Piper the agent of appellant was driving appellant's truck on Route 159, a north and south highway between Wood River and Granite City, Illinois, near the small

village of Roxana. Route 159 is a concrete slab, twenty-two feet wide, with a dark center line in the middle. Appellant's driver had left Roodhouse about 1:30 in the morning and had reached East St. Louis about three. He had unloaded his freight and was on the way home in an empty truck. The truck is about seven feet wide with the body on top of the platform, which is not solid, but is made up of strips, or what we call a semi-open body. Appellee came behind him. The driver of the truck stopped the truck on the public highway, contrary to the statute, and got out to answer a call of nature. Then he started on and at the time of the collision was traveling, as he said, about six miles an hour. We regard the evidence as uncertain whether the truck was still standing or whether it was moving at the time of the impact which then and there occurred. The truck was straddling the black line in the center; this is not denied by the driver. Appellee says he did not see the truck until he was within 50 feet of it and assigned as reasons that the flare of the lights at the Shell Refinery at Wood River interfered with his visibility and that the truck was of such a color that it was difficult to see, although he says his lights were in perfect order and would show up a truck like this at a distance of 75 to 100 feet.

Appellee undertook to go around on the left side as usual, but saw that he did not have room and feared collision with someone who might be coming. He changed his mind in that 50 feet and started to go to the right of the truck and didn't have room to get around apparently without leaving the slab; and so the impact, which did serious damage to the truck and very serious injuries to the appellee.

That the appellant through his agent was guilty of negligence we make no doubt on this record. There is but one question in the case, and that is a very serious one, namely, was the appellee at the time and place in question in the exercise of reasonable care

for his own safety? Both of these parties had been up practically all night the record shows. The road is straight and the way was clear at least a half a mile back from where the collision occurred. We are confronted with the question that when a case is as close as this where does the fact of contributory negligence leave off and the law of contributory negligence apply? Appellant has answered that question for us, by a familiar quotation. On page 44 of his brief he says this: ''Contributory negligence becomes, however, a question of law when it can be said that all reasonable minds would reach the conclusion under a particular factual situation that the facts did not establish due care and caution on the part of the person charged therewith.'' Who and what segment of humanity answers to the description of ''all reasonable minds?'' Who speaks for ''all reasonable minds?'' One judge has set a verdict like this aside. Another judge has upheld it. Twenty-four men have found that the appellee was free from negligence which caused his injuries. May they not be said to represent a fair cross-section of ''all reasonable minds'' when it comes to a decision as close on the facts as this? We think they do. This case was fairly submitted to the two juries and both juries have found that under all the facts and circumstances appellee was in the exercise of reasonable care for his own safety. One of the judges at least who heard the witnesses testify and was in a better position to judge, has upheld one of their verdicts. It is not for us to say that this record does not disclose what ''all reasonable minds'' would do under like circumstances and say for ourselves that they were wrong and that we are the ones who represent ''all reasonable minds,'' and that we say that this appellee was guilty of contributory negligence as a matter of law.

Complaint is made of instruction No. 5 which tells the jury that they should not understand by anything

the court has said during the progress of the trial or by anything contained in these instructions that the court has any opinion or has expressed any opinion concerning the facts in the case; the court instructs the jury that in reading the instructions to you the court does not intend to even intimate what in the judgment of the court your verdict should be. The exceptions leveled against the giving of this instruction merely undertake to constrain the English language to mean that which it does not mean. This instruction in substance has been given almost since the institution of the trial of civil suits. We think it was correctly given in this case.

We realize that this is a very close case on the facts, but we rest our judgment on the verdicts of two juries and the trial court. The judgment of the circuit court is affirmed.

*Judgment affirmed.*