**KEESHIN MOTOR EXPRESS CO., Inc. et al.**

v.

**PARK DAVIS LINES, Inc., et al.**

No. 9354(2).

United States District Court
E. D. Missouri, E. D.

Feb. 19, 1954.

Moser, Marsalek, Carpenter, Cleary & Carter and F. X. Cleary, St. Louis, Mo., for plaintiff.

Arthur Lits and Wilbur C. Schwartz, St. Louis, Mo., for defendant Park Davis Lines.

Glennon T. Moran, St. Louis, Mo., for defendant Palmero.

HULEN, District Judge.

Plaintiffs, Keeshin Motor Express Company and its trustees in reorganization, were, at about 2:00 A. M. on the night of May 1, 1953, operating their tractor-trailer on Highway 66 in Illinois. The rear end of the trailer was struck by a tractor-trailer driven by defendant Palmero and owned by defendant Park Davis Lines, Inc. Plaintiffs sue for damage to their tractor and trailer. Pal-mero counterclaims for personal injuries. The corporate defendant counterclaims for damage to its tractor-trailer. Jurisdiction results from status of plaintiff in reorganization under a Federal Act, and diversity, amount in controversy being in excess of $3,000 exclusive of interest and costs on claim of each party.

Plaintiffs base their claim on failure of defendants' driver to keep a vigilant lookout, to keep his motor vehicle under control, and failure to slacken the speed or to swerve. Defendants' charge of negligence is that plaintiffs' operator either stopped his motor vehicle on the highway without lights at night, or operated it at an unduly slow rate of speed without lights.

The place of collision was on a "late-type" concrete, two-lane highway. The vehicles were proceeding up a "slight" grade, in a northwardly direction, between Atlanta and McLean, Illinois. The highway was straight for "several hundred feet" to the north and south. The night was "cloudy." It was "misting." The pavement was wet.

Plaintiffs' tractor was a 1947 International. It had been in the shop for work on the engine shortly before the May 1st run between St. Louis and Chicago. Prior to the collision the driver of plaintiffs' tractor had stopped twice and found the trailer taillight out. The first time the driver fixed it by adjustment of the bulb. The second time a broken wire was found and repaired. The last stop was at Springfield. Plaintiffs' driver testified that he left Springfield and had driven about 50 miles when trouble developed with the engine. He thought it was a "valve." Up to this time the tractor was traveling at about 40 miles an hour. The engine trouble caused the tractor to reduce speed. At the time of the collision, the driver testified he was going "12 or 15 miles" an hour. He said he was looking for a place to pull off on the shoulder.

Defendant Palmero testified he was driving "about 40" miles an hour. He had on his "low" lights. He saw plaintiffs' truck when he was "75 or 100"

feet from it. He started to turn left to pass, saw the lights of a car coming from the north, then pulled back behind plaintiffs' trailer and was intending to pull onto the shoulder. He did not have sufficient time to pull to the right to avoid the rear of plaintiffs' trailer. Palmero struck the rear of plaintiffs' trailer a little to the right of center. Plaintiffs' tractor went into the ditch on the right side of the pavement. Plaintiffs' truck was loaded with 34,000 pounds of iron. Both sets of equipment were damaged, and Palmero sustained severe and permanent injuries.

Palmero testified plaintiffs' vehicle was stopped when he first saw it, and that no lights were burning on it, either front or rear. Plaintiffs' driver testified the impact was his first knowledge of the presence of defendants' tractor. He said he was knocked forward "about 50 feet." He immediately got out and went to the rear of his trailer and found "seven marker" lights on the rear still burning. The taillight had been damaged in the collision and was not burning. There is considerable conflicting testimony as to whether any lights were burning on plaintiffs' trailer after the collision. All the witnesses agree the right wheels of plaintiffs' equipment were off the highway, on the shoulder, after the collision. Plaintiffs' tractor-trailer was then generally in line with the highway.

## I.

■ Plaintiffs have the burden of showing their driver was free from negligence contributing to the damages sustained by them to their tractor-trailer.

Admittedly plaintiffs' equipment was old and not in good repair. A stop had been made twice to repair the taillight. Then engine trouble developed. The driver testified he was trying to reach a station some three miles ahead but had decided he could not and was looking for a place to pull onto the shoulder at the time of the collision. He testified his power was not sufficient to pull the trailer loaded with 34,000 pounds on the soft shoulder. There was no witness to the accident except the drivers of the two tractors. Pictures of the equipment introduced in evidence show little damage to the rear of plaintiffs' trailer. Defendants' tractor appears to have struck a solid, stationary object. It was demolished.

It would be difficult for one in Palmero's position to tell if plaintiffs' truck was moving slowly or stopped at and immediately preceding the time of the collision. Palmero saw plaintiffs' trailer for little more than a second before the collision. During this time he was engaged in trying to extricate himself from the danger of collision. A stopped truck or a slowly moving one would have presented little difference in appearance. The force of the impact and the damage to the trailer and tractor lend weight to the conclusion that plaintiffs' truck was either stopped or moving very slowly at the time of the collision. Considering the parallel position of plaintiffs' tractor-trailer to the highway after the collision, we are of the opinion it was off the highway before the impact. The driver of plaintiffs' tractor testified his power was not sufficient to pull the trailer on the soft shoulder. This circumstance indicates plaintiffs' truck was stopped at the time of collision.

There is a conflict in the testimony of the two drivers as to warning lights on the rear of plaintiffs' trailer at time of collision. We see no reason why more credence should be given to the testimony of one than the other. When towing in the plaintiffs' tractor it was noticed that the engine stopped and started a number of times. This indicates a like condition before the collision. Under this kind of operation and the use of a battery for starting the engine, voltage might be reduced to cause the lights to dim even if the lighting equipment was in good condition in other respects. The first person on the scene after the wreck was a truck-driver named Francis Davis. He had been following defendants' trailer at a distance and noticed the lights go out on defendants' equipment at the time of the impact. He pulled up on the west side of the highway and stopped opposite plain-

tiffs'. tractor. ˮ He impressed me as a fair and intelligent witness. He was wholly without interest in the outcome of the case. His testimony was that after he stopped his tractor and got out, he saw plaintiffs' driver get out of the cab of his tractor and that he had a flashlight in his hand. We think there is some significance in the presence of this flashlight. There was no testimony offered by plaintiffs to contradict it. Davis said the scene of the accident was completely dark when he arrived; that neither set of equipment had any lights burning. This does not establish that lights were not burning prior to the collision on plaintiffs' tractor or trailer, but it does contradict the testimony of the driver of plaintiffs' tractor. He testified that when he went to the rear of his trailer, after the collision, he found seven marker lights still burning. There were a number of witnesses who testified they came on the scene and saw no lights on the rear of plaintiffs' trailer. A highway patrolman testified for plaintiffs that when he arrived at the scene of the accident he saw seven marker lights on the rear of plaintiffs' trailer. Defendant Palmero was pinned down in the cab of the tractor driven by him by the force of the impact. He was in great pain. He could not be removed until a wrecking truck arrived and pulled the front of the cab and steering gear from the position they were in that held Palmero wedged in the tractor cab. Undoubtedly there was excitement among the spectators. This can well account for some differences among the witnesses as to what they saw at the scene.

We conclude that the lights on plaintiffs' truck at the time of the collision were either out, or by reason of much use in starting the motor, had been reduced to a point where they no longer served the purpose of warning other vehicles of the presence of plaintiffs' tractor-trailer on the highway.

■ We find that the driver of plaintiffs' tractor-trailer either had stopped the tractor driven by him, or was traveling at a very slow rate of speed at the time of collision, and that this operation, together with the failure to display lights on the rear of the trailer bright enough to be seen by the operator of a motor vehicle approaching from the rear, constituted negligence contributing to cause the collision.

We conclude plaintiffs cannot recover on their complaint.

## II.

Was defendant Palmero guilty of contributory negligence so as to bar recovery on the counterclaims?

■ Plaintiffs urge, in support of their position, Palmero's admission that his light when on "low" would not reflect an object within the distance his truck could be stopped, traveling at 40 miles an hour. This character of operation is negligence in some States. It is not negligence under the law of the State of Illinois. See Swinger v. Firman Equipment Corporation, 7 Cir., 94 F.2d 269.

■ We next consider plaintiffs' assignment of negligence in "failure of Palmero to keep a vigilant look-out." Palmero testified he saw plaintiffs' vehicle when "75 or 100 feet" from it. He testified that he could not stop under the circumstances then prevailing in less than 150 to 200 feet. There was expert testimony offered by plaintiffs that the lights on defendants' truck would have reflected an unlighted object at a minimum of not less than 150 feet under the most adverse conditions. The rear of plaintiffs' trailer was of no distinctive color. It would tend to blend with darkness and the highway. It was misting rain. All of these circumstances would tend to affect the distance that lights would reflect. They are of uncertain quantity, as to their effect on distance of reflection of lights. We are not prepared to accept the expert's opinion in preference to Palmero's under these circumstances. Palmero was at the scene, operating under conditions then existing. A natural desire to preserve life would prompt him to observe what was to be seen in the path of his tractor. Time taken to distinguish what was in the highway unlighted, as well as reac-

tion time, leaves very little difference in the testimony of the expert and the testimony of Palmero as to time to act. It is not great enough to say Palmero's testimony is unworthy of belief and to justify acceptance of the expert's testimony. There are many cases in the books from the State of Illinois holding that facts like those presented by this record make a submissible case.[1] We find against plaintiffs on this contention. See: Moyer v. Vaughan's Feed Store, 242 Ill.App. 308; Miller v. Burch, 254 Ill.App. 387; Budds v. Keeshin Motor Express Co., 326 Ill.App. 59, 61 N.E.2d 579; Jenisek v. Riggs, 320 Ill.App. 158, 50 N.E.2d 121; Herberger v. Anderson Motor Service Co., 268 Ill.App. 403; Skamenca v. Reeser, 294 Ill.App. 216, 13 N.E.2d 668; Keim v. Nichols, 340 Ill. App. 337, 91 N.E.2d 744; Brussel v. Lilly, 347 Ill.App. 533, 107 N.E.2d 32.

### III.

There is no substantial evidence of failure of Palmero to exercise control over his equipment prior to or after his discovery of plaintiffs' trailer on the highway, or that he was guilty of negligence in failing to slacken the speed or swerve the tractor operated by him after he saw plaintiffs' trailer. From the time Palmero saw plaintiffs' trailer, less than two seconds passed before the collision. In that time Palmero pulled to the left, saw the lights from the vehicle coming from the opposite direction, pulled back behind the trailer, and was attempting to pull to the right of the trailer at the time of the collision. Other drivers might have acted differently. Had Palmero devoted all of his energy to an attempt to stop he might have minimized damages and his own injury. Had he pulled to the right at the first sign of danger he might have avoided a collision. But we find nothing in Palmero's conduct so unusual, unreasonable, or surprising as to convict him of negligence under the emergency presented.

### IV.

Palmero sustained multiple fractures in the kneejoint socket of both legs, had several ribs fractured, and lost all of his upper teeth. He was in the hospital for two weeks. He had casts on his legs for seven to ten weeks. It was two to three months after the accident before he could use crutches. He returned to work on November 30. He was paid $43.00 a round trip from St. Louis to Chicago. He averaged two trips a week. His age was not given, but he impressed me as a man between thirty and thirty-five. He still suffers pain in his knees and has limitation of motion in the use of his knees. A physician testified that he had some bone fragment displacement in the back of each knee. He recommended an operation for the removal of these bone particles. If they were not removed, the physician gave it as his opinion that Palmero would eventually have traumatic arthritis. In any event Palmero has some permanent injury in each of his knees. His doctor bills to date are $1,551.10. There is no evidence Palmero will have an operation on his knees.

Considering a loss of earnings of approximately $2,500, allowing $5,000 for loss of all upper teeth and pain and suffering, and $7,500 for injuries to ribs and knees, plus doctor bills and hospital bills of $1,551.10, defendant Palmero is entitled to judgment on his counterclaim for $16,551.10.

### V.

Counsel for both sides have asserted that under the law of Missouri the burden of proving contributory negligence rests with the party defending the claim. This they assert even though the law of Illinois, where the cause of action arose, is contrary. Under our ruling we consider this question moot but one of counsel apparently has a different opinion. So we pass on it. The parties must rely on the case of Meredith v. Terminal R. R. Ass'n, Mo.App., 257 S.W.2d 221. This case holds that where an action arises in Illinois, and is sued on in Missouri, the Missouri courts will follow their own rule with respect to

1. That a plaintiff colliding with the rear of an unlighted vehicle on the highway can recover from the operator of the unlighted vehicle.

burden of proof of contributory negligence. We are not in agreement with the opinion in the Meredith case. The inevitable rule in Illinois is that a plaintiff cannot recover unless he can show himself free of contributory negligence. It is as much a part of plaintiff's case as that he show negligence on the part of the defendant. This Court is bound by the case of Fort Dodge Hotel Co. of Fort Dodge v. Bartelt, 119 F.2d 253, decided by the Eighth Circuit. This case holds that the burden of proving contributory negligence is a matter of substance. Being a matter of substance it is governed by the law of the State in which the cause of action arose.

## VI.

Defendant Park Davis Lines, Inc. sustained damages to its tractor in the sum of $3,875. The cost of repairs to the trailer was $3,362.48. Defendant Park Davis Lines, Inc. is entitled to judgment against the plaintiffs in the sum of $7,237.48.

Let judgment be settled and submitted accordingly.